WEEKS and others, Appellants, vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY, Respondent.

*December 19, 1890 — January 13, 1891.*

*Public lands: Private claims: Patents issued to person not entitled thereto: Equities of other persons: Trusts: Constructive notice to purchaser from patentee: Pleading.*

1. A patent of lands from the U. S. recited the issuance, pursuant to an act of Congress, of certain certificates of location in satisfaction of the unlocated and unsatisfied claim of the heirs and legal representatives of one W., which had been confirmed by a previous act, and that by virtue of one of said certificates the land patented had been located, in part satisfaction of said claim, by the patentee as assignee of the attorney in fact of the legal representative of said heirs and legal representatives of W. In an action by the heirs and legal representatives of W. against a grantee of the patentee, to have such grantee adjudged a trustee for their benefit and to compel the conveyance of the land to them, the complaint stated facts showing that the plaintiffs had never made any assignment of their rights; that one R., to whom the certificates of location had been issued and from whom the patentee had acquired them, had purchased the land claim of W. from a pretended administrator of W.'s estate,

appointed in proceedings fraudulently instituted in a court having no jurisdiction of said estate; also, that the surveyor-general who issued said certificates had indorsed thereon a statement that, from evidence on file in his office, the said R. was the legal representative of W. *Held*, on demurrer:

(1) The patent was not a conclusive adjudication that the patentee was entitled to the land as assignee of the rights of the plaintiffs.

(2) The act under which the surveyor-general issued the certificates not having provided that he should determine what particular persons were entitled thereto, his *ex parte* decision cannot defeat the rights of the true owners.

(3) The patentee, upon the facts stated, held the legal title to the land in trust for the plaintiffs.

(4) The defendant was chargeable with notice of the contents of the patent, and was bound to inform himself as to all assignments therein indicated; and, since a reasonably diligent inquiry would have disclosed to him the fraudulent character of the claim of the patentee, he also holds the title in trust for the plaintiffs.

2. In an action to compel the conveyance of land to the plaintiffs, where the complaint shows that the equitable title is in them, and admits that the legal title is in the defendant, but does not allege or admit that he is a purchaser for value without notice, the court cannot on demurrer consider the equities which the defendant may have as such a purchaser. Those equities, if any, must be shown by answer.

APPEAL from the Superior Court of *Milwaukee* County. The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This is an action in equity, brought by the plaintiffs, who claim to be heirs at law and legal representatives of William Weeks, deceased, to compel the defendant to transfer to them the legal title to certain lands described in the complaint, and which they allege are held by the railway company in trust for them. The defendant demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was sustained by the superior court, and the plaintiffs appeal from the order sustaining the demurrer.

The allegations in the complaint are sufficient to show that the plaintiffs are the real heirs at law and legal representatives of the said deceased, William Weeks, and it is not now disputed that the facts set forth in the complaint are sufficient to show that the plaintiffs are entitled to the relief asked for, unless, upon the facts stated in the complaint, the defendant is protected in his title on the ground that it is a purchaser in good faith for value, without express or implied notice of the title of the plaintiffs. The allegations in the complaint show:

(1) That the plaintiffs are the heirs at law and legal representatives of William Weeks, deceased.

(2) That William Weeks died in 1820, intestate, in the state of Louisiana.

(3) That at the time of his death he was entitled to 2,030 arpents of land in the parish of West Feliciana, state of Louisiana, which was granted to said Weeks by an order of survey of "Grand Pre," then governor of West Florida, on the 31st day of May, 1806.

(4) That Weeks did not get possession of said lands in his life-time.

(5) That no proceedings were taken by the heirs or legal representatives of said William Weeks to get possession of said lands so ordered to be surveyed by said "Grand Pre."

(6) That on January 12, 1855, the Congress of the United States passed the following act in regard to this claim of the heirs of William Weeks, deceased, viz.:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the heirs and legal representatives of William Weeks be, and they are hereby, confirmed in their claim to a tract of land, containing two thousand and thirty arpents, situated in the parish of West Feliciana, state of Louisiana, being the same granted to said William Weeks by an order of survey of "Grand Pre," then governor of West Florida, on the thirty-first day of May, one thousand eight hundred and six, according to the survey made by Ira C. Kneeland, deputy-surveyor, under commission from said gov-

Weeks and others vs. The Milwaukee, Lake Shore & Western R. Co.

ernor, on the twenty-second day of September, one thousand eight hundred and six, of record in the office of the register of the land office at Greensburg, Louisiana, and a patent shall issue therefor: *provided,* that this act shall be held and taken only as a relinquishment on the part of the United States. Approved January 12, 1855."

And on June 2, 1858, Congress passed a general law, entitled " An act to provide for the location of certain private land claims in the state of Missouri, and for other purposes;" and in sections 3 and 4 of said act are the following provisions, viz.:

"Sec. 3. . . . That in all cases of confirmation by this act, or where any private land claim has been confirmed by Congress, and the same, in whole or in part, has not been located or satisfied, either for want of a specific location prior to such confirmation, or for any reason whatever other than a discovery of fraud in such claim subsequent to such confirmation, it shall be the duty of the surveyor-general of the district in which such claim was situated, upon satisfactory proof that such claim has been confirmed and that the same in whole or in part remains unsatisfied, to issue to the claimant or his legal representatives a certificate of location for a quantity of land equal to that so confirmed and unsatisfied; which certificate may be located upon any of the public lands of the United States subject to sale at private entry at a price not exceeding $1.25 per acre; provided, that such location shall conform to legal divisions and subdivisions.

"Sec. 4. That the register of the proper land office, upon the location of such certificate, shall issue to the person entitled thereto a certificate of entry, upon which, if it shall appear to the satisfaction of the commissioner of the general land office that such certificate has been fairly obtained according to the true intent and meaning of this act, a patent shall issue as in other cases."

(7) The complaint then sets out at length that some persons other than the plaintiffs, their grantors, or ancestors, and without the knowledge of said plaintiffs, their ancestors, or any of them, and on the 3d day of April, 1876, instituted certain proceedings in the parish court of the parish of St. Tammany, in said state of Louisiana, setting forth that the estate of said William Weeks, deceased, was vacant, and that such estate consisted of the confirmed but

unsatisfied land claim hereinbefore referred to; that it was less than $500 in value, etc. The complaint then sets out the proceedings in said court at length, and shows that an administrator was appointed, and a pretended sale made by said administrator of the said land claim on the 25th of May, 1876, to one W. T. Cluverius, for the sum of $60. The complaint sets out facts sufficient to show that said court had no jurisdiction of said estate of said deceased, and that the whole proceedings in said court were a fraud upon the rights of the plaintiffs. The complaint also alleges that on the 29th day of June the said Cluverius transferred and sold the said claim to Winslow Robinson; that on the 28th day of July said Robinson executed and delivered to one J. L. Bradford a certain written power of attorney, whereby he authorized said Bradford, for him and in his stead, to apply for certificates of location under said act of 1858, in satisfaction of said claim of said William Weeks.

(8) " That after June 29, 1876, and before January 10, 1877, the said Winslow Robinson, claiming to be the legal representative of said William Weeks by virtue of said pretended administrator's sale, applied by his said attorney in fact, Bradford, to the surveyor-general of the United States for the district of Louisiana for the delivery to him, as such legal representative, of the certificate of location in satisfaction of the said land claim of the said William Weeks, provided for by the said act of Congress of June 2, 1858; and the said surveyor general having prepared certificates of location, numbered and lettered from 301a to 301t, inclusive, each for eighty acres, and 301u, for 126.92 acres, the whole for 1,726.92 acres (which said certificates, being forwarded to the commissioner of the general land office, were by him authenticated), did, upon such application, and notwithstanding the facts and provisions of law above cited, on January 10, 1877, deliver the said certificates to the said Bradford, attorney as aforesaid, and indorsed upon each of

Weeks and others vs. The Milwaukee, Lake Shore & Western R. Co.

said certificates a statement that, from evidence on file in his office, the said Robinson was the legal representative of the said William Weeks.

"That said certificates were, except as to the lettering thereof and the number of acres in each set forth, in the following form, to wit:

                        '(Act of June second, 1858.)
' No. 301 N.            Certificate of Location.           ―― Acres.
                        ' SURVEYOR-GENERAL'S OFFICE,
                        ' NEW ORLEANS, LA., Jan'y  , 1877.

'I hereby certify that by the act of Congress approved January 12, 1855, entitled, "An act for the relief of the heirs and legal representatives of William Weeks," the claim of the heirs and legal representatives of William Weeks is confirmed to the heirs and legal representatives of William Weeks for 1,726.92 acres of land, of which there remains unsatisfied the quantity of 1,726.92 acres, which quantity the said claimants are entitled to locate, pursuant to the provisions of the third section of the act of Congress approved June 2, 1858, entitled "An act to provide for the location of certain confirmed private land claims in the state of Missouri, and for other purposes."

'Now, therefore, be it known that on surrender of this certificate to the register of any land office of the United States, the said heirs and legal representatives of William Weeks, or their legal representatives, shall be entitled to locate in part satisfaction of said claim the quantity of eighty acres "upon any of the public land of the United States subject to sale at private entry at a price not exceeding one dollar and twenty-five cents per acre, provided that such location shall conform to legal divisions and subdivisions."

                ' SURVEYOR-GENERAL, DISTRICT OF LOUISIANA.
                        ' GENERAL LAND OFFICE.
                        ' WASHINGTON, D. C., January   , 1877.

' The foregoing certificate or scrip, having been lawfully issued by the Surveyor-General of Louisiana, is receivable, according to its terms, at any land office in the United States for the location of land subject to the entry at private sale and to which no adverse right exists.

                                    '――――, Commissioner.'

"That thereafter certain certificates of location were offered by the said Winslow Robinson or his assignee at the United States land office at Marquette, Mich., for location upon the following described lands, viz.: All of section 24,

township 47 north, range 45 west of Michigan meridian, in Michigan; and the register of said land office accepted said certificates in payment for said lands."

That thereafter, to wit, on or about the 1st day of March, 1883, letters patent were issued by the United States conveying the lands above described; and a copy of one of the patents issued is annexed to and made a part of the complaint. The following is a copy of such patent:

"THE UNITED STATES OF AMERICA.

"*To all to whom these presents shall come, greeting:*

"WHEREAS, by the 3d section of the act of Congress approved June 2d, 1858, entitled 'An act to provide for the location of certain confirmed private land claims in the state of Missouri, and for other purposes,' it is enacted 'that in all cases of confirmation by this act, or where any private land claim has been confirmed by Congress, and the same, in whole or part, has not been located or satisfied, either for want of a specific location prior to such confirmation, or for any reason whatsoever other than a discovery of fraud in such claim subsequent to such confirmation, it shall be the duty of the surveyor-general of the district in which such claim was situated, upon satisfactory proof that such claim has been so confirmed, and that the same in whole or in part remains unsatisfied, to issue to the claimant or his legal representatives a certificate of location for a quantity of land equal to that so confirmed and unsatisfied; which certificate may be located upon any of the public lands of the United States subject to sale at private entry at a price not exceeding one dollar and twenty-five cents per acre: provided, that such location shall conform to legal divisions and subdivisions.' And in the 4th section of the said act it is declared 'that the register of the proper land office, upon the location of such certificate, shall issue to the person entitled thereto a certificate of entry, upon which, if it shall appear to the satisfaction of the commissioner of the general land office that such certificate has been fairly obtained according to the true intent and meaning of this act, a patent shall issue as in other cases.'

"AND WHEREAS, on the twenty-second day of September, A. D. 1876, the surveyor-general of the United States for the state of Louisiana, in conformity with the provisions of the act aforesaid, issued his certificates of location numbered 301a to 301t, inclusive, each for eighty acres, and his certificate of location 301u for one hundred and twenty-six acres and ninety-two hundredths of an acre, in *full satisfaction of the unlocated and unsatisfied claim of the heirs and legal representatives of William*

Weeks and others vs. The Milwaukee, Lake Shore & Western R. Co.

*Weeks, deceased.* Confirmed by act of Congress approved January 12th, 1855.

"AND WHEREAS, it appears by certificate number twenty-seven of the register of the United States land office at Marquette, in the state of Michigan, which said certificate has been deposited in the general land office of the United States, that by virtue of the surveyor-general's certificate as aforesaid, numbered 301$n$, for eighty acres, there has been located the following described tract of land *in part satisfaction of the aforesaid claim of the heirs and legal representatives of William Weeks, deceased,* by George M. Wakefield, assignee of J. L. Bradford, attorney in fact of Winslow Robinson, *legal representative of the heirs and legal representatives of William Weeks, deceased,* the west half of the northeast quarter of section twenty-four, in township forty-seven north, of range forty-five west of Michigan meridian, in Michigan, containing eighty acres, according to the official plat of the survey of the said land returned to the general land office.

" Now KNOW YE, that the United States of America, in consideration of the premises and in conformity with the aforesaid act of Congress of June 2d, 1858, have given and granted, and by these presents do give and grant, unto the said George M. Wakefield or his legal representatives, the tract of land above described, TO HAVE AND TO HOLD the same, together with all the rights, privileges, immunities, and appurtenances of whatsoever nature thereunto belonging, *unto the said George M. Wakefield or his legal representatives,* and to his heirs and assigns forever.

"IN TESTIMONY WHEREOF, I, Chester A. Arthur, President of the United States of America, have caused these letters to be made patent, and the seal of the general land office to be hereunto affixed.

" Given under my hand at the City of Washington the first day of March in the year of our Lord one thousand eight hundred and [L. S.] eighty-three, and of the independence of the United States the one hundred and seventh.

"By the President, CHESTER A. ARTHUR,
"By WM. H. CROOK, Secretary."

(9) The complaint then alleges that a part of said land was afterwards, and on the 18th of May, 1887, conveyed by said patentee to the defendant railway company, describing the part of said land conveyed to said defendant, and that said railway company claims to own the said lands conveyed to it by said patentee, and it is also alleged in said complaint as follows:

" And these plaintiffs allege that the said pretended ad-

ministrator, when he assumed to control and dispose of the
said land claim of said William Weeks, and the said W. T.
Cluverius and said Robinson, when he assumed to purchase
the same, were not the legal representatives of the said
William Weeks, or of the heirs or legal representatives of
the said William Weeks, but by their acts became *quasi*
agents or constructive trustees for the true legal representa-
tives of the said William Weeks in respect of said land
claim; and the said Winslow Robinson and the said J. L.
Bradford, when he received the said scrip or certificates of
location from the surveyor-general of Louisiana in satisfac-
tion of said land claim, and each and every assignee of said
certificates, including the locators thereof, held the same as
such *quasi* agents or constructive trustees for the said true
legal representatives, and was chargeable with notice of
their rights in the premises; and that each and every
grantee under said locator, or their assignees, of the land so
located with said certificates, took and held such land as
such constructive trustee for the said true legal representa-
tives, and was chargeable with notice of their rights in the
premises; and that said defendant was and is bound as con-
structive trustee, as aforesaid, to convey said premises so
held by it to these plaintiffs, as the legal representatives of
said William Weeks.

"That said defendant refuses to convey said premises or
any part thereof to these plaintiffs, or to recognize their
rights therein, although requested so to do before action,
but claims to be the owner of said premises, and of the fee
thereof. That the said Cluverius, Winslow Robinson, and
J. L. Bradford are not, nor is either of them, a resident of
or within the state of Wisconsin or the state of Michigan.

"Wherefore these plaintiffs pray that the said defendant
be held and adjudged to hold the title to the premises last
hereinbefore described for the benefit of and as the trustee
of these plaintiffs, as tenants in common of the same, in

proportion as hereinbefore set forth; and that it be adjudged and decreed and ordered by this court that defendant forthwith convey to these plaintiffs, as tenants in common as aforesaid, the said premises so held by it; and that these plaintiffs recover their costs and disbursements in this action, and have such other, further, or different relief as may be just and equitable."

For the appellants there were briefs by *Quarles, Spence & Quarles*, and oral argument by *Charles Quarles*. They argued, among other things:

I. Whether the land claim held by William Weeks in his life-time was realty or personalty or a chattel real, it descended upon his death in 1820 to his heirs. In Louisiana personalty and realty alike descend, subject to the right of the heirs to renounce and thus avoid liability for the debts of the estate. *O'Donald v. Lobdell*, 2 La. 299; *Addison v. N. O. S. Bank*, 15 id. 527; *Beckham v. Henderson*, 23 La. Ann. 446; *La Page v. N. O. G. L. & B. Co.* 7 Rob. 183; *Womack v. Womack*, 2 La. Ann. 339; *Calvit v. Mulhollan*, 12 Rob. 258. See, also, *Blair v. Cisneros*, 10 Tex. 41, 42. Acceptance of the succession of William Weeks by the plaintiff's ancestors is alleged in the complaint. But this land claim, before confirmation, was real estate, and, by the principles of common as well as civil law, went to the heirs by descent cast. *Brush v. Ware*, 15 Pet. 93; *Duncan v. Veal*, 49 Tex. 603; *Paul v. Willis*, 69 id. 261; *Harwood v. Wylie*, 70 id. 538; *Reeder v. Barr*, 4 Ohio, 458.

II. All the proceedings in the parish court of St. Tammany parish whereon the title of the defendant depends, are void, collaterally: (1) Because no probate court had jurisdiction of the succession, there not having been a concurrence of the two requisites to jurisdiction, viz., death and non-acceptance by the heirs. *Melia v. Simmons*, 45 Wis. 334; *Flood v. Pilgrim*, 32 id. 376; *Griffith v. Frazier*, 8 Cranch, 24; *Jochumsen v. Suffolk S. Bank*, 3 Allen, 87. (2) In no

event could the parish court of St. Tammany parish acquire jurisdiction. The land claim, so far as it had any location, was in the parish of West Feliciana, and William Weeks died domiciled in that parish. It appears from the complaint that under the Louisiana Code the only court authorized to open the succession was a court of the parish in which the decedent died domiciled, or, in the event of his having no domicile, in the parish where the real estate was situated. This court has repeatedly held that the court having jurisdiction of the estate is that of the county in which the deceased resided at the time of his death, or in which the property is situated. *Reynolds v. Schmidt*, 20 Wis. 374; *Chase v. Ross*, 36 id. 267; *McCrubb v. Bray*, id. 333; *Melms v. Pfister*, 59 id. 194. The attempt to administer upon the estate of an intestate in a county other than that in which he resided, is a nullity. *Holyoke v. Haskins*, 5 Pick. 25; *S. C.* 9 id. 259; *Crosby v. Leavitt*, 4 Allen, 410; *People's S. Bank v. Wilcott*, 15 R. I. 258–260, and cases. The Louisiana courts have construed its Code, and have held that domicile was a jurisdictional fact, and that administration in a parish other than that indicated by the Code was void. *Succession of Williamson*, 3 La. Ann. 261; *Scott v. World*, 26 id. 286; *Miltenberger v. Knox*, 21 id. 399; *Clemens v. Comfort*, 26 id. 270; *Beale v. Walden*, 11 Rob. 72. See, also, *Duncan v. Veal*, 49 Tex. 603; *Paul v. Willis*, 69 id. 261; *Harwood v. Wylie*, 70 id. 538. The record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts do not exist, the judgment will be a nullity, notwithstanding the record may recite that they did exist. And thus, want of jurisdiction of the thing may be shown *aliunde* in proceedings *in rem*. *Thompson v. Whitman*, 18 Wall. 457; *Knowles v. G. & C. Co.* 19 id. 58. (3) Prior notice was essential to jurisdiction of the estate. Administration not preceded by advertisements

required by law are held to be null by the courts of Louisiana. *Succession of Curley*, 18 La. Ann. 728; *Succession of White*, 9 id. 232; *King v. Lastrapes*, 13 id. 582; *Succession of Henderson*, 2 Rob. 391; *Succession of Talbert*, 16 La. Ann. 230; *Succession of Gusman*, 35 id. 404; *Pfarr v. Belmont*, 39 id. 294. See, also, *Mohr v. Porter*, 51 Wis. 502; *Mohr v. Manierre*, 101 U. S. 417; *Gillett v. Needham*, 37 Mich. 143; *Breen v. Pangborn*, 51 id. 29. (4) The parish court had no power to appoint its clerk administrator. (5) No debts existed against the estate of William Weeks, and therefore no administration could be had. (6) The sale of the land claim was void, because no notice of sale was given to adversary parties. *O'Dell v. Rogers*, 44 Wis. 136; *Mohr v. Porter*, 51 id. 487; *Gibbs v. Shaw*, 17 id. 197; *Succession of Curley*, 18 La. Ann. 728. (7) The whole proceeding before the parish court was a gross fraud on the court and the parties.

III. The sale of the administrator was void because the thing attempted to be sold was not assets. The concession or order of survey which William Weeks received did not invest him with the fee, and no action to recover the land could be maintained until the claim had been confirmed by act of Congress. *Schneider v. Sickles*, 98 U. S. 203; *Dent v. Emmeger*, 14 Wall. 308. By the act of 1855 the heirs and legal representatives of William Weeks were confirmed in their claim. This act was therefore a grant to them directly, and carried title to them by grant and not by descent. *U. S. v. Grimes*, 2 Black, 610; *Bissell v. Penrose*, 8 How. 317, 341; *Morrison v. Jackson*, 92 U. S. 654, 662. The grant was to a class, and it was the intent to leave the question as to what individuals took under that grant to be determined by local law. *Cutting v. Cutting*, 6 Fed. Rep. 267–8; *Meader v. Norton*, 11 Wall. 442; *Widdicombe v. Childers*, 124 U. S. 400, 405; *Johnson v. Towsley*, 13 Wall. 87; *Shepley v. Cowan*, 91 U. S. 340. At the time of the

pretended administration in 1876 the right which the administrator assumed to sell was the property of the plaintiffs; therefore nothing passed by the sale.

IV. The defendant took with notice of plaintiffs' rights, through the recitals in the patent. Wade, Notice, secs. 46, 309–313; *Brush v. Ware*, 15 Pet. 93; *Pringle v. Dunn*, 37 Wis. 450, 466; 2 Pom. Eq. Jur. sec. 608, note 1; Id. sec. 626; *Sigourney v. Munn*, 7 Conn. 324; *Nelson v. Allen*, 1 Yerg. 360. The defendant was not entitled to rest on the indorsement by the surveyor-general upon the certificates of location, to the effect that from evidence on file in his office Robinson was the legal representative of William Weeks. This indorsement was an act entirely extra-official. The surveyor-general had no power to take proofs or make any finding in the matter. The duty of examining the evidence referred to as on file, rested upon the defendant. *Pringle v. Dunn*, 37 Wis. 466. Such evidence could only have been documents showing or referring to the fraudulent administration. Therefore, by the recitals in its title papers, the defendant was put in possession of the facts appearing on the record of the parish court, showing a failure of title. *Reeder v. Barr*, 4 Ohio, 446, 458.

In a supplemental brief, counsel for the appellants cited, as to the effect of a patent upon equities of third persons, and as to the duty of purchasers from the patentee to investigate assignments and other matters recited in the patent: *Townsend v. Greeley*, 5 Wall. 326, 335; *Wirth v. Branson*, 98 U. S. 118, 121; *Minter v. Crommelin*, 18 How. 87; *Smelting Co. v. Kemp*, 104 U. S. 636, 647; *Moore v. Robbins*, 96 id. 530; *Hodge v. U. S.* 20 Ct. Claims, 352; *Hardy v. Harbin*, 4 Sawy. 542, 543; *Moore v. Hunter*, 6 Ill. 317, 330, 331; *Urket v. Coryell*, 5 Watts & S. 60; *Bancroft v. Consen*, 13 Allen, 50; *Burkart v. Bucher*, 2 Bin. 455; *Arnold v. Grimes*, 2 Iowa, 1; *Hagthorp v. Hook's Adm'rs*, 1 Gill & J. 273, 301; *Chicago, R. I. & P. R. Co. v. Kennedy*, 70 Ill. 350,

361; 2 White & T. L. C. in Eq. top p. 189; *Doyle v. Teas,* 5 Ill. 202; *Hogan v. Page,* 2 Wall. 605; *Am. Em. Co. v. Call,* 22 Fed. Rep. 765, 768; *Barney v. Dolph,* 97 U. S. 656; *Babcock v. Lisk,* 57 Ill. 328.

For the respondent there was a brief by *Alfred L. Cary* and *Bradley G. Schley,* and oral argument by *Mr. Cary* and *Mr. E. P. Vilas.* They contended, *inter alia,* that the patents issued to Wakefield were presumptively valid, and were *prima facie* evidence that all the incipient steps had been regularly taken before the title was perfected thereby. *Polk's Lessee v. Wendal,* 9 Cranch, 87, 98; *Minter v. Crommelin,* 18 How. 87, 88; *U. S. v. Arredondo,* 6 Pet. 691, 727; *Bagnell v. Broderick,* 13 id. 436. It appears on the face of the complaint that the defendant was the purchaser for value of Wakefield's legal title, without notice of any of the alleged equities in favor of the plaintiff. The patents state that Wakefield was the assignee of the heirs and legal representatives of William Weeks, and Wakefield's grantees could rely upon this statement as being true, without investigating its truth. *Schnee v. Schnee,* 23 Wis. 377, 381; *Perkins v. Hays,* 5 Am. Dec. 680. The plaintiffs have been guilty of such laches that they are not entitled to relief. Weeks died in 1820; the land claim was confirmed to his heirs and legal representatives in 1855; the probate proceedings were had in 1876; the certificates of location were issued is 1877; Wakefield got his patents in March, 1883; and this action was commenced in August, 1890. Presumptively the confirmation of the land claim was procured by the heirs and legal representatives to whom it was confirmed. After such confirmation they rested thirty-five years before taking any steps to assert their rights. Under the circumstances it is not sufficient for them to say only that they were ignorant of their rights. *Badger v. Badger,* 2 Wall. 87; *Richards v. Mackall,* 124 U. S. 183; *Estate of Holden,* 37 Wis. 98; *Broderick's Will,* 21 Wall, 503, 518, 519.

TAYLOR, J.   The only arguments insisted upon by the counsel for the respondent as a ground for sustaining the demurrer to the complaint were: (1) The defendant is to be protected as a *bona fide* purchaser for value, without notice, express or implied, of the fraud in the proceedings under which the pretended assignment of the land claim was made to the persons under whom the patentee claimed; and (2) that the plaintiffs show upon the face of their complaint that they have been guilty of such laches as ought to estop them from insisting upon their title.   It is sufficient to say, as to the second point, the allegations in the complaint which are admitted by the demurrer show that the plaintiffs have proceeded with reasonable promptness in endeavoring to enforce their claim after they became aware of the illegal and fraudulent proceedings on the part of those now claiming the grant.   *Meader v. Norton*, 11 Wall. 442, 458.

Upon the first point, it is insisted on the part of the learned counsel for the appellants that the defendant is bound to take notice of all facts which appear in its chain of title; that the patent is the basis of its title; and what is stated in said patent, by way of recital or otherwise, must be held to have been known by the defendant when it purchased the lands from the patentee.   It was not contended by the learned counsel for the respondent, upon the argument of this appeal, that the facts stated in the complaint do not show that the proceedings taken in the probate court of Louisiana, under which there was a pretended sale of the land claim belonging to the heirs and legal representatives of William Weeks, deceased, were fraudulent and void as against the said heirs and legal representatives.   The brief of the learned counsel for the appellants has discussed that question with great force, and has cited abundant authorities to sustain their contention upon that question.   We are not called upon, therefore, on this appeal to go into

SUPREME COURT OF WISCONSIN. [78

that discussion further than to say that we think the con-
tention of the appellants on that point is amply sustained
in the authorities cited in appellants' brief.   The real ques-
tion is whether the respondent is to be charged with knowl-
edge of such fraud, either actual or implied, as will make
it a holder of the title conveyed to it in trust for the real
owners thereof.

It will be seen that by the act of Congress of January 12,
1855, the then heirs at law and legal representatives of
William Weeks, deceased, became the owners of the grant
made to said Weeks by "Grand Pre," governor of West
Florida, in 1806, and that unless the lands so granted and
surveyed had been otherwise disposed of the said heirs
would have been entitled to recover possession of such
grant, unless the same were held by some better and adverse
title.   It is equally clear that, under the act of Congress of
1858 above cited, the same heirs and legal representatives
of William Weeks, to whom the title to said grant was con-
firmed by the act of 1855, were the only persons who were
entitled to obtain certificates for the location of other lands
of the United States, of the same number of acres contained
in said original grant, in case such original grant had not
been located or satisfied, either for want of a specific loca-
tion prior to such confirmation, or for any reason whatso-
ever other than a discovery of fraud in such claim subsequent
to such confirmation.   The act then makes it the duty of
the surveyor-general of the district in which such claim was
situated, upon satisfactory proof that such claim has been so
confirmed, and that the same in whole or in part remains
unsatisfied, to issue to the *claimant or his legal representa-
tives* a certificate of location for a quantity of land equal to
that so confirmed and unsatisfied, which certificate may be
located upon any public lands of the United States subject
to sale at private entry, at a price not exceeding $1.25 per
acre.   It is clear that under these statutes no person or per-

sons could lawfully obtain a certificate of location under said statutes, except the person or persons to whom said grants had been confirmed, or their legal representatives, and in the case at bar no one was entitled to receive such certificate of location except the heirs or legal representatives of William Weeks, deceased, who were such at the date of the passage of the act of confirmation, January 12, 1855. They are the only persons to whom the grant was confirmed, and consequently the only persons entitled to receive a certificate of location for such part of the grant as had not been received by them, but had been otherwise disposed of, and they were the only persons to whom the surveyor-general of Louisiana was, under the act of 1858, authorized to issue said certificates of location. It seems to us clear that the words " claimant or his legal representatives," found in the act of 1858, were clearly intended to mean the same persons mentioned in the confirmatory act of 1855, viz., "the heirs and legal representatives of William Weeks, deceased," and not the assignee of such heirs and representatives.

It seems almost too clear for argument that if any person or persons, not being the said heirs or legal representatives of said deceased, made application to said surveyor-general for such certificates of location, and not in fact being their true and lawful assignee, and through fraud or otherwise obtained the same under such claim, and used them in entering lands of the United States in satisfaction of such claim, and took a patent therefor, the holder of such patent would hold such lands in trust for the true heirs and representatives; and the only remedy of the true heirs would be to bring an action in a court of equity to compel the holder of such patent to transfer the title to them. The rule is well established that, where the United States has transferred any of the lands owned by the United States by patent, the legal title to such land passes to the

patentee named in the patent; and, although he obtained it by fraud or forgery, still the legal title has passed from the United States to the grantee, and any rights that third persons may have to the lands described in the patent must be obtained by an action in equity brought against the patentee and those claiming under him with notice of the rights of such third person or persons. The *status* of such grantee named in the patent, as respects the real owner, is well defined in the South Dakota Code (sec. 3920, Comp. Laws): "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

It is not seriously contended by the learned counsel for the respondent that the grantee in the original patent, upon the facts stated in the complaint, should not be adjudged to hold the title in trust for the benefit of the plaintiffs. He is charged in the complaint with knowledge of the fraud which was perpetrated by the parties' proceedings in the probate court of Louisiana, and is therefore in no better condition than Cluverius, the purchaser at said pretended administrator's sale, would have been, had he procured the certificates of location and the patent in his own name. In *Farmers' & T. Bank v. Kimball Milling Co.* 47 N.W. Rep. (S. D.), 404, the court say: "Involuntary or constructive trusts embrace a much larger class of cases, and include all those instances in which a trust is raised by the doctrine of equity for the purpose of working out justice in the most efficient manner, when there is no intention of the parties to create a trust relation, and contrary to the intention of the one holding the legal title. This class of trusts may be usually referred to fraud, either active or constructive, as an essential element. This extension of the fundamental principles of trusts enables courts of equity to wield a

remedial power of great efficacy in protecting the rights of property. They can follow the real owner's property, and pursue his real ownership, into whatever form it may be changed or transmuted, even into the hands of third parties, so long as the property or fund into which it has been converted can be traced, until it goes into the hands of an innocent purchaser for value and without notice." The doctrine stated in the above quotation is so well established as to need no citation of authorities, and, as we understand, is not disputed by the learned counsel for the respondent in the case.

The fact that a patent for the land has been issued by the United States does not in any way interfere with the rights of parties which existed previously to its issue. These rights are not adjudicated by the officers issuing the same, except in cases where there is some provision of law made for determining the rights of such parties before the patent is issued, for the purpose of determining to whom it should issue, such as cases arising under the pre-emption laws, and in other special cases. In the case at bar no provision was made by the law for determining the question by the surveyor-general as to what particular person is entitled to have a certificate of location, but he is simply required to issue a certificate of location to the claimant or his legal representatives. His judgment is *ex parte*, as it must necessarily be, and cannot defeat the right of the real owner. This has been frequently decided by the supreme court of the United States. *Hogan v. Page*, 2 Wall. 605; *Meader v. Norton*, 11 Wall. 442, 457; *United States v. Morillo*, 1 Wall. 709; *Beard v. Federy*, 3 Wall. 493; *Martin v. United States*, Hoff. Land Cas. 146; *Simmons v. Wagner*, 101 U. S. 260; *Carroll v. Safford*, 3 How. 440, 460; *Witherspoon v. Duncan*, 4 Wall. 210, 218. See, also, *Cornelius v. Kessel*, 53 Wis. 395, which was affirmed by the supreme court of the United States in 128 U. S. 456.

Weeks and others vs. The Milwaukee, Lake Shore & Western R. Co.

In the case of *Hogan v. Page, supra,* the supreme court says: " A difficulty had occurred at the land office at an early day in respect to the form of patent certificates and of patents, arising out of applications to have them issued in the name of the *assignee* or *present claimant,* thereby imposing upon the office the burden of inquiring into the derivative title presented by the applicant. This difficulty also existed in respect to boards of commissioners under the acts of Congress for the settlement of French and Spanish claims. The result seems to have been, after consulting the attorney general, that the commissioners of the land office recommended a formula that has since been very generally observed, namely, the issuing of the patent certificate, and even the patent, to the original grantee or his legal representatives; and the same has been adopted by the several boards of commissioners. This formula, ' or his legal representatives,' embraces representatives of the original grantee in the land by contract, such as assignees or grantees, as well as by operation of law, *and leaves the question open to inquiry in a court of justice as to the party to whom the certificate, patent, or confirmation should inure."*

The patentee, claiming in his application for the patent that he is the assignee or personal representative of the plaintiffs, must, in order to deprive the plaintiffs of their rights under the original grant made to them by act of confirmation in 1855, show that he is such assignee. It hardly needs authority for this statement. Having acknowledged the right of the plaintiffs to the lands he claims under the patent, in order to make his claim good he must show that he has in some lawful way become vested with such right. So far as the grantee in the patent is concerned, there can be no doubt upon the question of the right of the plaintiffs to contest his right to the land by showing that he is not their assignee in fact, and that his pretended claim to be such is a fraud upon them.

The only question as between the patentee and the true owner is as to the burden of proof whether, after a patent has been issued to a person claiming to be assignee of the true owner, such patent will be presumed to have been issued to the party rightfully entitled to the land, and that any other party claiming the same, as against such patent, must take the burden of proving that the claim of the patentee is a fraudulent one. This question is not a material one in this case, as the complaint alleges all the facts necessary to show the fraudulent claim of the patentee. That the rights of the parties, as between the plaintiffs and patentee, are open to litigation in the court, is really not seriously disputed by the respondent.

It is urged by the learned counsel for the respondent that as the United States has issued a patent to the person claiming to be assignee of the real parties entitled to make the entry and for whose benefit the law authorized the patents to be made, and as the defendant purchased from the person named in said patent as grantee of the United States, it is not chargeable with notice of the title of the plaintiffs; in other words, that it is a purchaser in good faith, for value, without notice. This claim would be unanswerable if there were nothing in the patent itself which was notice to the defendant of the rights of the plaintiffs to the lands granted to the patentee. But the patent on its face shows that the certificates of location were issued in satisfaction of the claim of the heirs and representatives of William Weeks. It recites the act of confirmation to said heirs and representatives of January 12, 1855, and that the location of the particular tract thereby granted was "in part satisfaction of the aforesaid claim of the heirs and legal representatives of William Weeks," and that the locator was George M. Wakefield, assignee of J. L. Bradford, attorney in fact of Winslow Robinson, " legal representative of the

heirs and legal representatives of William Weeks." It is not claimed that the defendant is not to be charged with knowledge of this patent and its contents, but it is claimed that, admitting that it had knowledge of its contents when it purchased from the patentee therein named, there was no duty imposed upon the defendant, by reason of such knowledge, to make any investigation or inquiry as to the truth of the statement made in said patent. Under the rule above stated by the supreme court of the United States, that the grant by the United States of lands in satisfaction of a previously confirmed grant to some particular person or persons is not a conclusive adjudication that the particular person to whom the grant is made, when made to a person claiming to be an assignee of such other person or persons, is such assignee in fact, but leaves that question open to be disposed of in the courts, it seems to us that the purchaser from the patentee takes the risk of the title; and if the true owners can show that there never was any assignment of their claims made to the party named in the patent, directly or indirectly, they will defeat the title of the defendant; and, if the claim of the pretended assignee was fraudulent as to the true owners, the title derived from the government will be held in trust for them. It would hardly be contended that, if the defendant had itself purchased the certificate of location, it could have held it against the real parties entitled to it upon proof of the facts stated in the complaint. In such case they would be simply claiming as the assignee of the plaintiffs, not directly, but through alleged intermediate assignees, all of whom are chargeable with fraud in obtaining it. And under the rule stated in the case of *Hogan v. Page*, 2 Wall. 605, the issuing of the patent in favor of such supposed assignee does not destroy the right of the true owner, but possibly changes the burden of proof, and requires the real owner

to show the fraudulent character of the pretended assignment, instead of compelling the pretended assignee to show his right by affirmative proof.

Upon the facts stated in the complaint, it appears to us, by a reasonable search and investigation the defendant could have discovered the fraudulent character of the claim of the assignee mentioned in the patent. If the allegations of the complaint are true, no assignment of the plaintiffs' claim was ever made, and the pretended assignment would have been easily found to have been utterly fraudulent and void. We do not intend to intimate that the defendant was bound to investigate as to frauds which might have been perpetrated to procure an assignment, which only rested in parol and were in the nature of secret frauds. If, by making reasonable inquiry, the defendant had found an assignment in fact by the plaintiffs to an immediate or remote assignee, he would not have been chargeable with notice of any secret fraudulent practices on the part of such assignee in procuring such assignment. So, if in searching for the title of such alleged assignee he had found that he became such by reason of a judicial sale made by a court having jurisdiction of the parties and the subject matter, he could not be defeated in his title by any evidence not appearing in the record of such proceeding which would show that such judgment and sale were procured by the fraud of the parties taking such proceedings. In all such cases the defendant would stand in the same position as it would against the true owner had it purchased from the fraudulent grantee of the true owner without knowledge of such fraud. See *Jackson v. Henry*, 10 Johns. 185, 194.

It seems to us that in cases of the kind at bar the United States acts as the agent of the true owner of the lands confirmed to the plaintiffs by the statute referred to in the patent, with power simply to convey to them or to their assignee, and, if it grants to an individual who is not in fact

524     SUPREME COURT OF WISCONSIN.     [78

Weeks and others vs. The Milwaukee, Lake Shore & Western R. Co.

the assignee of the true owners, such transfer conveys no
equitable title to such grantee, and, the fact appearing upon
the face of the grant that the grantee claims solely as such
assignee, the title taken under such patent must be held for
the benefit of the real owner. It could not be contended
that, if a grantee of real property claims to hold it by vir-
tue of a deed executed on behalf of the real owner by virtue
of a power of attorney from such owner, it would not be
necessary for him to show affirmatively that the party so
executing the deed was in fact authorized to execute the
same on behalf of the owner; and if it turned out that the
power under which the deed was executed was a forgery,
or void for other reason appearing upon its face, such deed
would fail to convey any title either in law or equity. See
*Jackson v. Burgott*, 10 Johns. 457; *Jackson v. Neely*, 10
Johns. 374. The only difference in favor of the patent is
that under the law the patent conveys the legal title to the
grantee, but subject to the claims of the real owner.

It seems to be pretty well settled that a purchaser is held
to have notice of what appears on the face of the title under
which he claims; and this rule applies as well to patents as
to deeds and conveyances by individuals. *Pringle v. Dunn*,
37 Wis. 449; *Brush v. Ware*, 15 Pet. 93; *Reeder v. Barr*, 4
Ohio, 446; *Bagnell v. Broderick*, 13 Pet. 436; *Burkart v.
Bucher*, 2 Bin. 455; *Sigourney v. Munn*, 7 Conn. 324; 2 Pom.
Eq. Jur. § 626; Wade, Notice, §§ 46, 310, 311; *American
Emigrant Co. v. Call*, 22 Fed. Rep. 765, 768; *Barney v.
Dolph*, 97 U. S. 656. Pomeroy sums up the matter, as to
the duty of a claimant to examine all the evidences of title
under which he claims, briefly as follows: "It is an imper-
ative duty in law imposed upon him to ascertain all the in-
struments which constitute essential parts of his title, and
to inform himself of all they contain." See 2 Pom. Eq. Jur.
§ 626, *supra*. Under this rule it would seem that the de-
fendant was bound to inform itself of all the assignments

indicated in the patent; and if it had done so, and the facts are as stated in the complaint, it would have found that there never had been any assignment of the plaintiffs' claim to any one, and especially that it had not been assigned to the person or persons under whom the patentee claims.

We conclude, therefore, that under the patent and upon the facts stated in the complaint it was the duty of the defendant to have made examination of its title, and that if it had done so with reasonable diligence and care it would have been found absolutely void in equity.

There is another reason why the demurrer in this case should have been overruled. The allegations in the complaint establish the equitable title to the lands in question in the plaintiffs, and simply admit that the defendant holds the legal title. It is not alleged or admitted that the defendant is a purchaser for value and without notice of the plaintiffs' right; and upon a demurrer to such complaint the court cannot consider the equities which the defendant may have to the lands in question, as a purchaser without notice, to defeat the plaintiffs' claim. These equities, if it has any, must be shown to the court by answer stated clearly and fully, so that if they be proved on the trial they will defeat the plaintiffs' claim. The plaintiffs in their complaint have shown an equitable title which antedates the legal title held by the defendant, and must prevail unless the defendant can show an equitable claim to the lands equally as good or better than the plaintiffs. See *Boone v. Chiles*, 10 Pet. 177; 1 Daniell, Ch. Pr. 702; *Balcom v. New York L. I. & T. Co.* 11 Paige, 454; 2 Pom. Eq. Jur. §§ 784, 785; *Farmers' & T. Bank v. Kimball Milling Co.* 47 N. W. Rep. (S. D.), 406.

*By the Court.*— The order of the superior court is reversed, and the cause is remanded with directions to the superior court to overrule the demurrer, and for further proceedings according to law.