WALKER and others, Respondents, vs. DALY, imp., Appellant.

*September 5 — September 29, 1891.*

*Public lands: Private claims: Patents issued to persons not entitled thereto: Fraud: Trusts: Remedy at law: Statute of limitations: Laches: Constructive notice of rights of true owners: Res adjudicata.*

A private land claim having been confirmed by act of Congress, a person other than the true owners fraudulently procured the certificates of location to be issued to him, and assigned the same, and patents were issued to his assignees, granting the land to them and their legal representatives. In an action by the true owners against grantees of the patentees to have such grantees adjudged trustees for the plaintiffs, it is *held*, on demurrer to the complaint:

(1) The plaintiffs have no adequate remedy at law to recover the land.

(2) The certificates of location being hereditaments, replevin or trover could not have been maintained therefor.

(3) The land having been obtained by fraud, a trust for the benefit of the true owner's attached thereto.

(4) The action, having been brought within eighteen months after the discovery of the facts constituting the fraud, is not barred by statute. R. S. sec. 4222, subd. 7.

(5) Under the circumstances of this case the plaintiffs were not guilty of laches which should defeat the action.

(6) *Weeks v. M., L. S. & W. R. Co.* 78 Wis. 501, as to constructive notice to defendants of the rights of the true owners, followed.

(7) Proceedings of a probate court in another state, by which the land claim in question was sold as the property of a person who was not the owner thereof, cannot affect the claim of the true owners or constitute an obstacle to the action.

APPEAL from the Circuit Court for *Wood* County. The facts are stated in the opinion.

The cause was submitted for the appellant on the brief of *Reed, Grace & Rock,* and for the respondents on that of *Quarles, Spence, Hoyt & Quarles.*

WINSLOW, J. This is an appeal from an order overruling the demurrer of defendant *John Daly* to the complaint. The complaint in its essential particulars is very similar to the complaint in *Weeks v. M., L. S. & W. R. Co.* 78 Wis. 501, which is very fully set out by the late Mr. Justice TAYLOR in his opinion in that case. The material allegations of the complaint are:

(1) That the plaintiffs are the heirs at law of Robert J. Walker and Woodson Wren, both deceased intestate.

(2) That one Pedro Apolinar, in 1798, owned an inchoate land claim on Bayou Chevreuil, or Deer Creek, La., for 1,361.12 acres of land on an order of survey by the governor of said district, which was confirmed to him by an act of Congress approved February 28, 1823.

(3) That on May 12, 1825, said Apolinar by deed conveyed his right, title, and interest in said claim to one Bowie, and that by sundry mesne conveyances the title became thereafter vested in said Robert J. Walker and Woodson Wren.

(4) That without fault on the part of Apolinar or those claiming under him said claim remained unlocated and without provision for its satisfaction until the passage by Congress of the act approved June 2, 1858, the material parts of which act are fully set out as in the *Weeks Case, supra.*

(5) "That during the lapse of time between the origin of said inchoate claim, its confirmation, and the provision for its satisfaction in the act of Congress above quoted, many of those interested therein had died, and their heirs or legal representatives with respect to said land claim, many of whom were minors, (as well as the survivors among those originally interested) had become widely scattered, and had, by reason of said delay, lost all hope of satisfaction for their said claim, and were ignorant of their rights under the said act of 1858; and that neither the surveyor general of the district of Louisiana, in office from June 2, 1858, to February 6, 1861, nor his next successor, appointed August 16, 1869, nor any of his successors, ever took any steps to apprise the said legal representatives of their said rights, it being the practice to issue certificates of location under said act only upon application therefor; and that neither these plaintiffs, nor any of the persons from whom they derive title to their interests in said land claim, ever applied for or received any certificate of location under said act of 1858, or other thing in satisfaction of said claim, or any part thereof.'

(6) That in the year 1876 probate proceedings upon the estate of Apolinar, as a vacant estate, were instituted in the parish court of St. Tammany parish, La., and a pretended administrator's sale of said land claim made substantially in

the manner set forth in the *Weeks Case*, except that one Bradford was the purchaser at such sale.

(7) That Bradford pretended to sell said claim to one Calhoun Fluker, and that Fluker, pretending to be the legal representative of Apolinar, in August, 1876, applied for, and in March, 1877, obtained, from the surveyor general of the district of Louisiana, a number of certificates of location for 1,361.12 acres of land in the aggregate, running to "Pedro Apolinar or his legal representatives," which certificates were each indorsed by said surveyor general with a statement that Calhoun Fluker was the legal representative of Apolinar and entitled to locate the certificate; also indorsed with a statement by the commissioner of the land office that it was receivable at any land office in the United States for the location of any land subject to entry.

(8) That the following provisions of law have been in force in Louisiana since the year 1825: "When a man undertakes of his own accord to manage the affairs of another, whether the owner be acquainted with the undertaking or ignorant of it, the person assuming the agency contracts the tacit engagement to continue it and to complete it until the owner shall be in a condition to attend to it himself. He assumes also the payment of the expenses attending to business. He incurs all the obligations which would result from an express agency with which he might have been invested by the proprietors."

(9) That Fluker assigned various of said certificates to various parties, and that certain described lands in Wood, Marathon, and Oneida counties were located thereunder, and that patents were issued December 30, 1881, substantially in the form set forth in the *Weeks Case*, reciting that the certificates of location were in full satisfaction of the claim of Apolinar, and describing the grantee in each as assignee of "Calhoun Fluker, legal representative of Pedro Apolinar." That defendant *Daly* received by conveyance

from the patentee a part of the located lands, and is in possession thereof, and refuses to convey to plaintiffs or recognize their rights. That said probate proceedings, pretended sale, application for and receipt of certificates, and all the subsequent proceedings by which the defendants obtained title, were in fraud of plaintiffs' rights, and without their knowledge or consent, and that plaintiffs were each and all wholly ignorant of the same until within eighteen months last past, when they immediately prepared to enforce their rights.

(12) That Pedro Apolinar never had a domicile or residence in St. Tammany parish, and on that account, as well as on account of the fact that said land claim was not the property of Apolinar, said probate proceedings and administration sale are wholly void, and said Fluker and Bradford and their assignees, including defendant, became constructive trustees of plaintiffs, and are bound to account for rents and profits, and to convey said lands to plaintiffs.

The prayer is that the defendants be adjudged trustees, and that they account and convey.

The demurrer was based on eight grounds, but the points argued and relied on were: (1) Adequate remedy at law; (2) statute of limitations; (3) laches; (4) that defendant had no notice of plaintiffs' rights when he purchased; (5) that the decree of the Louisiana probate court is unimpeachable collaterally in this action.

It is clear that the plaintiffs have now no remedy at law, and have not had since the issuance of the patents in 1881. They have no shred of legal title upon which to maintain ejectment. Had the granting clause of the patents run to "Apolinar or his legal representatives," as in *Hogan v. Page*, 2 Wall. 605, the question would be different, but here the grant was to one Bardeen or his legal representatives. But appellant's counsel contend that plaintiffs had in 1877 a remedy at law by way of trover or replevin for

the recovery of the certificates of location, and that, this remedy being now barred by the statute of limitations, the equitable remedy is also barred, because this is not " a case which was before February 28, 1857, solely cognizable by the court of chancery." R. S. sec. 4222, subd. 7. Whether replevin or trover could be maintained depends upon whether these land claims were chattels. In our opinion, they were clearly hereditaments, descendible to heirs; fulfilling Blackstone's definition of incorporeal hereditaments,— " a right issuing out of a thing corporate, whether real or personal." 2 Bl. Comm. 20. This land claim, until perfected by location and patent, was simply a right granted by the United States to receive so many acres of land,— a mere equity. The doctrine that replevin may be maintained and is an adequate remedy for the recovery of an equitable right merely is hardly tenable. *Brush v. Ware,* 15 Pet. 93–108; *In re Lettrieus Alrio,* 5 Dec. Dep. Int. 158–163.

But suppose the plaintiffs had obtained through some court, by the medium of a replevin suit, the certificates of location, how much better off would they be than before? The officers of the government would not be concluded by the replevin judgment. The plaintiffs could not compel the government by action in the courts to issue to them a patent. *U. S. v. Jones,* 131 U. S. 1. What have plaintiffs gained by this alleged " adequate " remedy at law? Absolutely nothing. Their decree binds no one but themselves. They must litigate the question as to who is entitled to the patent over again in the land department. They have tried one lawsuit for the luxury of engaging in another. It seems plain that the only adequate remedy, as well before the patents issued as after, was in equity. On the law side of the court they could have got nothing that even approached relief.

From this conclusion it follows that the statute of limita-

tions has not run against this claim, because it is a case falling fully within the provisions of subd. 7, sec. 4222, R. S. The cause of action did not accrue until the facts were discovered, which, according to the complaint, was within eighteen months prior to the commencement of this action.

But appellant says that on the facts stated there was no fraud and no trust; that Fluker was a mere tort-feasor, who had got hold of plaintiffs' property. It will scarcely be necessary to discuss these questions at length. If the procurement of a bogus title by means of proceedings such as are here set out be not a fraud on the real owners, then we need a prompt revision of the law on the subject. If it be a fraud (and there can be no doubt on that question here), then a trust for the benefit of the real owners attached to the property secured by means of the fraud. No authorities are needed to this proposition.

Upon the question of laches the case seems no stronger for the defense than the *Weeks Case,* and, although we have re-examined the question at the request of counsel, we are still entirely satisfied with the position there taken. The same remark may be made on the question of notice to defendant of the rights of plaintiffs. That question was most fully discussed by the late Mr. Justice TAYLOR in the same case, and settled in accordance with what we consider correct legal principles.

Counsel maintain that the main question in the case, to wit, the effect of the decree in the Louisiana probate court, has, since the decision in the *Weeks Case,* been settled in favor of defendant by the supreme court of the United States, and cites us to the case of *Simmons v. Saul,* 138 U. S. 439. It is not necessary in this case to affirm or disaffirm the principles decided in *Simmons v. Saul;* those principles do not affect this case in the least. Grant that the order of the probate court granting administration was a judicial determination of the existence of the necessary

Walker and others vs. Daly.

preliminary facts, and that its judgment cannot be impeached collaterally, nor the truth of its record concerning matters within its jurisdiction disputed, such judgment certainly cannot operate on property which deceased did not own at the time of his death. Administration of the estate of John Smith may be conclusive collaterally as to property which John Smith owned, but is it conclusive as to property owned by John Jones? Because some probate court, in the course of the administration of Smith's estate, has assumed to sell the property of Jones, are Jones' heirs to be deprived of their inheritance until they have journeyed to the probate court and appealed or taken some direct proceeding to set the judicial determination aside? The question is its own answer. Probate courts have jurisdiction of the estates of dead men, not of live ones; and when it appears that this land claim did not belong to Apolinar when he died, the proceedings of this probate court of St. Tammany parish become perfectly immaterial. They present no obstacle of the most shadowy kind. They do not have to be attacked, because they are not in plaintiffs' way. They are simply necessary to be alleged in the complaint as being a necessary and fundamental part of the fraudulent attempt to obtain the property in dispute from those who appear by the complaint to be its true owners.

*By the Court.*— The order of the circuit court is affirmed.