HODGE et al. v. PALMS et a.

(Circuit Court of Appeals, Sixth Circuit. May 13, 1895.)

No. 232.

1. PROBATE COURTS—DECREE—PROPERTY AFFECTED.

One V., a citizen of Louisiana, was the owner, prior to 1835, of a land claim, confirmed to him by act of congress pursuant to the provisions of the treaty of cession of Louisiana, and to the report of the commissioners appointed to carry out such provisions. In 1835, V. conveyed such claim to the predecessors of the complainants. By the act of congress of June 2, 1858, provision was made for issuing certificates to the owners of such claims, upon which locations of land might be made, no limitation of time for applying for such certificates being imposed. In 1872 proceedings were taken in a parish court in Louisiana to obtain administration upon the estate of V., and to sell the land claim as a part of his succession, and, under such proceedings, the claim was sold to the predecessors of defendants, who obtained the certificates provided by the act of 1858, and, soon after, located the same on the land in controversy. Upwards of 20 years later the complainants, who had until then been ignorant of the proceedings in the matter of V.'s estate, filed this bill to have defendants declared to hold the legal title of the land as trustees for them. *Held*, that the proceedings in the parish court in 1872 could have no effect upon the claim which had been sold in 1835 by V. himself.

2. LACHES—STALE CLAIM.

*Held*, further, that as complainants had no reason to watch proceedings relating to the estate of V., or to suspect that their rights would be affected by any such proceedings, it could not be held that they were barred by laches from asserting their claim, nor that such claim was stale.

Appeal from the Circuit Court of the United States for the Eastern district of Michigan.

This was a suit by John L. Hodge and Andrew H. Sands against Francis S. Palms and others, trustees of the estate of Francis

Palms, deceased, and others, to impress a trust upon the legal title to certain lands, and for an accounting. The circuit court sustained a demurrer to the bill. Complainants appeal. Reversed.

Robert B. Lines and Dwight C. Rexford, for appellants.
H. M. Duffield and J. T. Keena, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge. This is a suit in equity instituted by a bill filed in the United States circuit court for the Eastern district of Michigan. The case stated in the bill resembles that of Garrett v. Boeing (No. 197) 68 Fed. 51, in all essential particulars except one. The equitable title which the complainants assert is founded upon a deferred private land claim against the United States, of date 1789, for 2,708 acres of land, which land claim originally belonged to one Antonio Vaca. Similar proceedings to those in the Garrett Case were had in the year 1872 in the parish court of Catahoula parish, in Louisiana, at the instance of Daniel J. Wedge, in which the petition was in form substantially the same as in the Garrett Case, and was followed by like proceedings, resulting in a sale of the said land claim to one W. H. Hawford. The surveyor general of Louisiana issued to Hawford a certificate of location, which was on the 19th day of November following certified by the commissioner of the general land office as receivable according to its terms at any land office in the United States for the location of land subject to entry and private sale. This surveyor general's certificate, thus approved, was located at the United States land office at Marquette, in the state of Michigan, upon the lands described in the bill. The lands thus located were afterwards patented by the United States to persons whose titles, respectively, the defendants now have, and under which they deraign title and are in possession. The complainants, according to the allegations of the bill, have themselves acquired the rights of Antonio Vaca, the original owner of the claim, and they say, in paragraph 3 of their bill, "that the rights of the said Antonio Vaca in respect to said land claim were by him aliened, sold, and conveyed by deed duly recorded November 7, 1835, in the parish of Carroll, state of Louisiana, in which parish the said land claim was then embraced, to one Andrew H. Adams." And it is from the said Andrew H. Adams that they trace their title. In other respects the material facts are as above stated, and the grounds upon which the bill is rested are the same as in the case above referred to. The defendants demurred to the bill. The demurrer was sustained by the court below, and the bill dismissed, and thereupon the complainants brought the case here on appeal.

The complainants contend that the probate court of Catahoula parish had no jurisdiction or authority over this land claim as constituting a part of Vaca's succession, and we think this contention must be sustained. If the statement contained in paragraph 3 of the bill is true, and the demurrer admits it to be so, this land

claim had been sold and conveyed by Antonio Vaca during his life, and the deed conveying the same had been on record for 37 years before Vaca's succession was opened by the proceedings in the Catahoula parish court, upon the foundation of which the defendants' title rests. It follows, therefore, that this land claim was not embraced in Vaca's succession, and was not subject to administration as part thereof. It seems too clear for argument or discussion that the probate court has no authority to divest and dispose of the title to property which the decedent has in his lifetime duly conveyed to other persons. Walker v. Daly, 80 Wis. 222, 49 N. W. 812; Grevemberg v. Bradford, 44 La. Ann. 400, 421, 10 South. 786. The persons who held the land claim at the time when the probate proceedings in question were instituted were not parties to those proceedings and had no notice of them. It is only upon the idea that the proceedings in the probate court are proceedings in rem that personal notice is not deemed essential to the validity of the proceedings. The res is the property of the succession in a case like this, and the jurisdiction attaches to the substance of that as it existed at the death of the decedent. This view of that subject makes it necessary, in determining the case, to consider other questions which we did not find it necessary to pass upon in the Garrett Case.

The defendants object to the theory upon which the complainants seek to hold them as constructive trustees. There certainly seems some incongruity (and this incongruity was commented upon in the case of Grevemberg v. Bradford, 44 La. Ann. 400, 10 South. 786) in averring in one part of their bill that the probate proceedings were utterly void, and therefore conveyed no right or title whatever to the scrip upon which the lands were located, and then insisting in another part that in what they did Wedge, as promoter of the proceedings, and Hawford, as purchaser of the claim at the probate sale, and his successors, down to the time of the location of the land, should be held and treated as trustees for the real owners of the land. That is not exactly the ground upon which the complainants' case ought properly to be rested. It was by the use of the evidence of the void probate proceedings as color of title to the land claim that the scrip, which upon its face represented the substance of the thing owned by the complainants, was obtained from the surveyor general and the land department. This scrip was effective in the location and procurement of the legal title of the land by a patent from the United States, whereby the defendants have become possessed of property which the United States intended to confer upon the rightful owners of the land claim, and upon this foundation we think the bill may be rightfully sustained. Meader v. Norton, 11 Wall. 442; Johnson v. Towsley, 13 Wall. 72, 87; Widdicombe v. Childers, 124 U. S. 400, 8 Sup. Ct. 517, and the cases cited at page 404, 124 U. S., and page 517, 8 Sup. Ct.

It is further insisted by the defendants that complainants' claim is stale, and that their laches has been such as ought justly to debar them from prosecuting the suit. To our minds, this is the

most difficult branch of the controversies involved in these litigations; but upon the facts stated in the bill we are inclined to hold that this defense is not maintainable. The complainants were the owners of this claim. They, and those from whom they derived title, were the owners of this claim by purchase from the original owner. There was no reason why they should watch the proceedings in the parish courts of Louisiana to see what might be done with respect to the succession of Antonio Vaca; and nothing that was done by the defendants, and those through whom they claim title, so far as we can find, was anything of which the complainants were required to take notice, and of which they would be likely to have any notice in fact. So far as they knew, no entry upon their rights was impending or threatened, and we are unable to see that the defendants have any right to say that the complainants should have moved earlier to prevent that which the complainants had not the least reason to suspect. The complainants apparently owed no duty to the defendants, who, without their knowledge or subsequent discovery, had secretly invested themselves with the complainants' title under color of a false assumption of right. "Such defenses (laches and the statute of limitations) cannot prevail where the relief sought is grounded on a charge of secret fraud, and it appears that the suit was commenced within a reasonable time after the evidence of the fraud was discovered." Meader v. Norton, 11 Wall. 442, 458. And this rule was applied by the supreme court of Wisconsin in the case of Walker v. Daly, 80 Wis. 222, 49 N. W. 812, to almost precisely such a case as this.

Again, the defendants insist that the complainants ought not to maintain their bill because the defendants have invested their time, money, and skill in the location of the lands and in securing the products thereof, which land and products the complainants now seek to recover from them, in the doing of which the defendants have acted in good faith. But no such question arises upon the pleadings as they now stand, and it would be premature for us to express an opinion upon questions which may be involved in issues possible to be hereafter raised. For the same reason it is not expedient to now decide what may be the scope and measure of the ultimate relief to be awarded the complainants if they shall successfully maintain their suit. For the reasons above stated, we think the decree of the court below should be reversed, and the case remanded, with directions to give leave to the defendants to answer the bill.