Judgment and order affirmed, with costs. All concur.

---

### McMILLIAN v. LAUER et al.

(Supreme Court, Special Term, Monroe County. May, 1893.)

1. WATER EASEMENTS—DEED—MILL PROPERTY.
　　Deeds of mill property recited that the grantees and their assigns should be supplied with water for milling purposes from a certain mill race owned by the grantors, and empowered such grantees to maintain its banks in good repair, and clear its channel from impediments, and to draw off water when necessary for deepening or improving it. The expenses were to be paid in ratio to the quantity of water which the parties, by virtue of their respective titles, had the right to use. *Held,* that the deeds gave the grantees a perpetual easement in the mill race, and the right to have the water course kept open.

2. SAME—RIGHT TO OBSTRUCT MILL RACE.
　　The charter of the city of Rochester, (section 41,) which provides that the common council shall have power to cause any mill race in the city to be covered with bridges, or otherwise, in the same manner that other public improvements are directed, does not authorize the city to erect a bridge pier in a mill race within the city without the owner's consent, or without first obtaining title by condemnation proceedings, and compensating the owner therefor, since the legislature cannot authorize the taking of private property for such purpose without compensation.

3. SAME—EXTENT OF OBSTRUCTION.
　　In such case the extent of the obstruction that would be caused by such pier is immaterial.

4. SAME—PRESCRIPTION—WHAT CONSTITUTES.
   The fact that for more than 35 years there has been a bridge across such stream, which spans the entire race way, gives such city no prescriptive easement in such race way.

5. SAME—REMEDY OF OWNER—INJUNCTION.
   Injunction is the proper remedy of the owner of a mill race, where a city is about to erect a bridge pier therein without his consent, and without compensation having first been made, and title obtained, under the power of eminent domain.

Action by William S. McMillian against Frederick C. Lauer and others to enjoin defendants from erecting a bridge pier in a mill race appurtenant to plaintiff's mill, in which defendants moved to dissolve the injunction. Motion denied.

Edward Harris and William W. Mumford, for plaintiff.
C. D. Kiehel, City Atty., for defendants.

DAVY, J. The principal question which arises upon this motion is whether the city of Rochester has a legal right to construct a stone pier four feet in width, of solid masonry, in the center of the Johnson and Seymour mill race, at a point where the present Court street bridge spans the raceway on the east side of the Genesee river. The plaintiff is the owner and in possession of a lot on the west side of this race, upon which has been erected a valuable stone building for manufacturing purposes. Along the race way are also other valuable buildings, devoted to milling and manufacturing purposes, the owners of which derive the water power for moving the machinery they contain from the race way in question. This right and privilege has been exercised and enjoyed in common by such owners ever since the race way was constructed, which was about the year 1814. The plaintiff claims that if such a pier is erected it will seriously obstruct the flow of the water, and in time of high water it will cause the ice and other obstacles to accumulate, and in time of low water it will cause an accumulation of dirt, mud, and rubbish, which will prevent the free and unimpeded flow of the water, thereby greatly damaging his water privileges in said race way. The learned city attorney contends that this action cannot be maintained, and one of the reasons assigned is that the mill owners do not own the fee to the race way. It appears from the motion papers that this mill race originally belonged to Johnson and Seymour, who were also the owners of the lots thereon, and when they conveyed them it was expressly stated in the deeds that the grantees and their assigns should be supplied with water for milling purposes from this race way; and they were empowered to maintain and keep its banks in good repair, and to clear its channel from floodwood, or other obstructions or impediments, and to draw off the water when necessary for deepening, extending, or improving it. The expenses incurred therefor were to be paid in ratio to the quantity of water which each party, by virtue of their respective titles, had a right to use.

It is a rule of law well settled in this state that a deed of a mill, with the appurtenances, will pass everything necessary for

the free and full enjoyment of the mill property. The deeds from Johnson and Seymour attach the raceway to the mill lots as land, and create a perpetual easement therein, which easement is termed by the elementary writers an "incorporeal hereditament." 1 Bouv. Inst. §§ 1595–1598. And by the express terms of the statute it may be held and enjoyed in fee as a freehold estate. 3 Rev. St. (7th Ed.) pp. 2175, 2205, 2326; Washb. Easem. 3–14; Nellis v. Munson, 108 N. Y. 460, 15 N. E. Rep. 739.. Voorhees v. Burchard, 55 N. Y. 102, was a case where certain premises, upon which there was a saw-mill, had been conveyed by metes and bounds, with the appurtenances, describing it as grantor's mill property. Between the premises conveyed and the highway was a piece of land, which had for many years been used as a way to the mill, and as a mill yard for storing logs. There was no other access to the mill from the highway, and the use of this land was necessary to the operation of the mill. It was held that an easement of right of way, and for storing logs, was acquired in said land by the grant. In Green v. Collins, 86 N. Y. 253, Miller, J., says:

"It may also be remarked that in the conveyance of a mill site the water privilege is a most important element of value, and hence, in determining what shall pass as an incident appurtenant to the grant, it is the necessity of the mill and its free enjoyment which controls."

The race in question was built for operating the mills. Their value was enhanced by reason of the water privileges derived from the race, and it is to be presumed that the grantees paid, and the grantors received, an enlarged price for their lots by reason of this added value. There was secured to the plaintiff, in the deed from the original grantors, the right and privilege of having this water course kept open, which is absolutely essential to the beneficial use and enjoyment of his property.

It is also claimed by the defendants that the city charter (section 41) gives the city the right to erect a pier in this race. That section provides that the common council shall have power, by ordinance, to cause any mill race within said city to be covered with bridges or arches, or otherwise, in the same manner that other public improvements are directed. It may be laid down as a well-settled principle that every proprietor of a mill which is operated by a natural stream of water has a right that it shall continue to flow to and from his premises in the quantity and manner in which it has been accustomed to flow. The same rule applies to artificial water courses like the one in question. The legislature, therefore, could not, under the constitution, authorize the city to take possession of the race way, which is private property, and erect a pier, without first compensating the owners therefor. Mills, Em. Dom. § 79; Lewis, Em. Dom. § 61; Story v. Railroad Co., 90 N. Y. 152; Lahr v. Railroad Co., 104 N. Y. 292, 10 N. E. Rep. 528.

It is also asserted by the defendants that when the proposed pier is erected, according to the plan of the engineer, it will not obstruct the flow of the water. That fact is disputed by the plaintiff. This motion, however, does not hinge upon that point. The

question is not how much or how little the flow of the water will be impeded by the erection of this pier. It is a question as to the authority of the city to interfere with the race way for the object contemplated. If the city has a legal right to erect a pier 4 feet in width, I do not see why it may not construct one 20 or 30 feet in width, and completely obstruct the flow of the water.

The defendants also claim that the city has acquired such an easement in the channel of the race way as entitles it to erect a pier therein without the consent of the mill owners. An easement is defined to be "a right, without profit, created by grant or prescription, which the owner of one estate may exercise in or over the estate of another." Washb. Easem. 2; 3 Kent, Comm. 452; Nellis v. Munson, 108 N. Y. 460, 15 N. E. Rep. 739. The law always looks with suspicion upon a claim to property acquired by prescription, and courts generally require proof clearly establishing such title before they will aid the party whose ownership hinges upon such a claim. It is not contended that the city acquired an easement by grant, and I am unable to discover how it has acquired one by prescription. There is no proof that the city ever occupied the bed of the race way for any purpose since it was constructed. The present Court street bridge, which was erected more than 35 years ago, spans the entire race way, so that the water flows under it unobstructed. While the erection and maintenance of this bridge for so long a period may give the city an easement over the channel, it does not, however, give it an easement in the race way. A prescriptive easement, for the purpose contemplated, could only be acquired by the city's taking possession of the bed of the stream, and erecting a bridge pier therein, and maintaining it adversely to the plaintiff's title for 20 years. I am of the opinion that the erection of the contemplated pier would be such an interference with private property, under the constitution of this state, (article 1, § 6,) as to entitle the mill owners to just compensation as a condition precedent to the taking of private property for public use. Payment for the damages which the owners will sustain must be made before their property can be taken. Entry upon the premises without payment would constitute a trespass, and an injunction is the proper remedy to prevent the taking of possession, unless the owners waive their right to an injunction, and sue for damages, or possession of their property. Galway v. Railroad Co., 128 N. Y. 145, 28 N. E. Rep. 479; Tallman v. Railroad Co., 121 N. Y. 123, 23 N. E. Rep. 1134. It would be a gross injustice to them, considering the expensive structures which they own, that have been erected and devoted to milling and manufacturing purposes, which derive their power for moving the machinery from the water that flows through this race way, to permit the city to obstruct the free flow of the water and deprive them of the use of their property, without just compensation. It would also be an act of injustice to the taxpayers charged with the expense of this improvement to compel them to pay for the erection of a pier which might be removed the next day after it was constructed. The law will

not permit any such injustice, either to the mill owners or the taxpayers of the city. If it is necessary for the construction and maintenance of this bridge that a pier should be erected in the mill race, as contemplated, the city must, before erecting it, either obtain consent of the mill owners, or obtain the title thereto by condemnation proceedings under the statute. The motion, therefore, to dissolve the injunction, is denied, with $10 costs.