E. B. HELLER and S. LINGSTON, Doing Business
as GOODWILL CLOTHING COMPANY, Appel-
lants, v. JOHN LUTZ, Doing Business as JOHN
LUTZ & COMPANY.

**In Banc, February 10, 1914.**

1. **POWER TO CONTRACT: Subject to Police Regulation.** In
civilized society there is no such thing as an unrestricted
power on the part of individuals to contract; the power is
always subject to wise and beneficent police regulations. A gen-
eral statute prohibiting an act which may prove detrimental to
the public welfare will be upheld unless clearly violative of some
provisions of the organic law.

2. **UNEARNED WAGES: Assignment: Impairment of Right to
Contract: Constitutional Statute.** The statute (Laws 1911, p.
143) declaring that "all assignments of wages, salaries and
earnings, not earned at the time the assignment is made,
shall be null and void," is not violative of either the Federal
or State Constitution. It does not attempt to regulate labor
or to interfere with contracts in regard to any present
tangible property right or interest. It simply provides that
those who labor shall not assign their future earnings, which
are not property rights, have no potential existence and may
never have; and it does not take the workman's liberty or
property or the gains of his industry without due process of
law. Nor is it an unreasonable restraint upon the liberty of
the citizen to contract, but its tendency is to increase the
providence of workmen and therefore to promote the general
welfare. Its validity is upheld as a wholsome exercise of the
police power.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Collins, Barker & Britton, Carl Otto* and *William F. Fahey* for appellants.

(1) The right to assign wages, earned and unearned out of existing employment, has long been recognized as a right and privilege inherent to citizenship. Such right is a property right within the constitutional meaning of that term. Loan Assn. v. Railroad, 124 Mass. 584; Frorer v. People, 141 Ill. 171, 16 L. R. A. 492; Massie v. Cesna, 239 Ill. 352; Rodijkeit v. Andrews, 5 L. R. A. (N. S.) 564; Bell v. Mulholland, 90 Mo. App. 612; State v. Julow, 129 Mo. 173; Allgyre v. Louisiana, 165 U. S. 578; State v. Tie & Timber Company, 181 Mo. 536. (2) The action in question is invalid, being in violation of the Fourteenth Amendment of the Constitution of the United States and section 30 of article two of the Constitution of Missouri. State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State v. Tie & Timber Co., 181 Mo. 536; Commonwealth v. Perry, 155 Mass. 517; Godcharles v. Wigeman, 113 Pa. St. 431; State v. Coal & Coke Co., 33 W. Va. 188; Cooley on Constitutional Limitations (6 Ed.), 430-434. (3) The act in question is invalid, being in violation of section 4 of article 2 of the Constitution of Missouri. State v. Tie Co., 181 Mo. 536; State v. Loomis, 115 Mo. 307; State v. Coal & Coke Co., 33 W. Va. 188; Cooley on Constitutional Limitations (6 Ed.), 430-434; Godcharles v. Wigeman, 113 Pa. St. 431; Massie v. Cessna, 239 Ill. 352. (4) The act in question is invalid, being in violation of section 28 of article 4 of the Constitution of Missouri. State v. Clark, 54 Mo. 34; State v. DeBar, 58 Mo. 375; St. Louis v. Wortman, 213 Mo. 139; St. Louis v. Quarry

254 Mo. 45.

Co., 244 Mo. 479; Miller v. Jones, 80 Ala. 89; Bronson v. Oberlin, 41 Ohio St. 476; McConnel v. Jersey City, 39 N. J. L. 38; In re Hauck, 70 Mich. 396. (5) The citizen can be deprived of his right to assign his wages, salaries and earnings—the gains of his own industry—only by the valid exercise of the police power of the State, and the act in question is not a proper exercise of such power. The right to contract by assignment with reference to the gains of one's own industry may be regulated or restricted under the police power, but such right cannot in its entirety be taken from the citizen under the guise of the police power. State v. Tie & Timber Co., 181 Mo. 536; State v. Julow, 129 Mo. 163; Gundling v. Chicago, 177 U. S. 183; Eubank v. Richmond, 226 U. S. 137; State v. Martell, 226 U. S. 225; State v. Miksicek, 225 Mo. 561; State v. Railroad, 242 Mo. 356.

*George Eigel* for respondent.

(1) The act in question is valid and not in violation of the Fourteenth Amendment of the Constitution of the United States, on section 30 of article two of the Constitution of Missouri. Textbook Co. v. Weissinger, 160 Ind. 34, 65 L. R. A. 599; Railroad v. Ebersole, 87 N. E. 1090; Hancock v. Yaden, 6 L. R. A. 576; Iron Co. v. Harbison, 103 U. S. 14; Holden v. Hardy, 169 U. S. 366; Railroad v. Mottley, 219 U. S. 467. (2) The act in question is valid, and not in violation of section 4 of article two of the Constitution of Missouri. Railroad v. Matthews, 174 U. S. 96; Textbook Co. v. Weissinger, 160 Ind. 34, 65 L. R. A. 599; Railroad v. Ebersole, 87 N. E. 1090; Hancock v. Yaden, 6 L. R. A. 576; Iron Co. v. Harbinson, 103 U. S. 14; Holden v. Hardy, 169 U. S. 366; Shaffer v. Mining Co., 55 Md. 74. (3) The act in question is valid and not in violation of section 28 of article four of the Constitution of Missouri. O'Connor v. Transit Co., 198 Mo. 623;

State v. Hamlett, 212 Mo. 80; Cox v. Railroad, 174
Mo. 588; State v. Jockey Club, 200 Mo. 34; Coffey v.
Carthage, 200 Mo. 616; Osborne v. Charlevaux, 114
Mich. 655; Williams v. State, 48 Ind. 306.

WALKER, J.—Appellants and respondent are
separately engaged in the mercantile business in the
city of St. Louis, under the firm names set forth in
the title.   On the 16th day of August, 1911, one Pat-
rick Hannigan was in the employ of the respondent;
prior thereto he became indebted to appellants, and
to secure the payment of such indebtedness, on the
date above mentioned gave appellants an assignment
of all money or wages due or to become due to him
from respondent within a period of six months from
the date of the execution of said assignment.   No
money or wages were due to him from respondent at
said date.   Appellants, upon the execution of said
assignment, notified respondent of same, who five
days thereafter returned the notice, stating, in effect,
in his reply, that he would ignore same as in violation
of the statute prohibiting the assignment of unearned
wages, and that he, theretofore, had paid Hannigan the
wages due him.

No further communication was had between the
appellants and respondent in regard to this matter.
On the 23d day of September, 1911, appellants brought
suit against respondent to recover the amount of
Hannigan's debt to them.   The case was tried upon
an agreed statement of facts, the material portions of
which we have set forth above.   The trial court ren-
dered judgment for the defendant.

Plaintiffs filed a motion for a new trial, in which,
among other averments purely formal, they allege
that:

"The court erred in finding, as a matter of law,
that the Act of the General Assembly of Missouri of
1911 (Laws 1911, p. 143), relating to contracts and

promises, and providing that all assignments of wages, salaries and earnings not earned at the time the assignment is made, shall be null and void, is not in violation of the Fourteenth Amendment of the Constitution of the United States, and invalid because thereof.

"The court erred in finding, as a matter of law, that said act is not in violation of section 4 of article 2 of the Constitution of Missouri, and is not invalid for that reason.

"The court erred in finding, as a matter of law, that said act is not in violation of section 30 of article 2 of the Constitution of Missouri, and is not invalid for that reason.

"The court erred in finding, as a matter of law, that said act is not in violation of section 28, article 4, of the Constitution of Missouri, and is not invalid for that reason."

Upon the overruling of this motion, an appeal was applied for and granted to this court.

Omitting the address and signature, the notice given by the appellants to respondent, is as follows:

"You are hereby notified that Patrick Hannigan did sell and assign, transfer, and set over to the undersigned, all money and wages due or to become due from you to the said Patrick Hannigan in accordance with the terms of a certain written-printed instrument, which will be shown you on application. There is now due us from the said Patrick Hannigan the sum of twenty-two dollars and fifty cents ($22.50).

"You will therefore, either pay all of the said wages to the undersigned or retain out of any money or funds now due, or to become due from you to the said Patrick Hannigan, sufficient of said money or funds, to satisfy the amount to be paid under the terms of said written-printed instrument, and you will pay such over to the undersigned.

"St. Louis, Mo., August 16, 1911."

The statute is in the following language:

"All assignments of wages, salaries or earnings must be in writing, with the correct date of the assignment and the amount assigned and the name or names of the party or parties owing the wages, salaries and earnings so assigned; and all assignments of wages, salaries and earnings, not earned at the time the assignment is made, shall be null and void." [Approved April 7, 1911, Laws 1911, p. 143.]

I. *Notice of Assignment.* We question the sufficiency of the notice of the assignment. The statute is mandatory in its terms and its express purpose is to limit the right of creditors and the power of debtors in the assignment of wages, salaries and earnings. The notice, therefore, should have been drawn in strict conformity with the statute in that it should have stated the date of the assignment and have set forth its purport. This is true regardless of the validity of the latter part of the statute, of which appellants complain, and which is not involved in the question of notice.

The appellants were seeking to bind respondent for the debt of another. Their notice should have informed him of all the facts necessary to have enabled him to determine the extent to which he was sought to be bound, instead of referring him to a "certain written-printed instrument" which appellants with ironic generosity proposed would be "shown him on application."

II. *Is the Assignment a Property Right?* The construction of the statute in its relation to the constitutional provisions which it is claimed to violate, will suffice under appellants' contention to dispose of this case; but we are inclined to doubt the correctness of the conclusion reached in cases wherein it is held

that such assignments are valid as constituting property rights. This we regard as a fallacy. It may be admitted that the term "property" includes everything which is the subject of ownership, corporeal, or incorporeal, tangible or intangible, visible or invisible (32 Cyc. 648, and cases); that no corporeal, tangible or visible property right exists in cases involving the assignment of unearned wages, is beyond question; these classes, therefore, may be dismissed from the discussion, leaving for our consideration their antithesis, viz., incorporeal, intangible and invisible rights, to determine whether the term property rights may with propriety be employed as a basis for the right to assign unearned wages. An incorporeal property right is one issuing out of a thing corporate, real or personal, or concerning, or annexed to, or exercisable within, the same. [2 Black. Com. 20; 32 Cyc. 659; Whitlock v. Greacen, 48 N. J. Eq. 359, 360.]

The enumeration of these classes of rights, recognized by the ancient English law, is not applicable here on account of the nonexistence in this country of several of same. We still have, however, *annuities* (3 Kent Comm. 460), *rights of common* (Smith v. Floyd, 18 Barb. [N. Y.] 522, 527; Western Univ. v. Robinson, 12 Serg. & R. [Pa.] 29, 32; 8 Cyc. 346), *easements* (Mackey v. Harmon, 34 Minn. 168, 172; McMillian v. Lauer, 24 N. Y. Supp. 951, 953; Clawson v. Wallace, 16 Utah, 300, 307), *franchises of corporations* (Gibbs v. Drew, 16 Fla. 147, 149, 26 Am. Rep. 700; 19 Cyc. 1451), *rents* (Brown v. Brown, 33 N. J. Eq. 650, 659; Van Wicklen v. Paulson, 14 Barb. [N. Y.] 654, 655; 3 Kent Comm. 460), and *patent rights* (Commonwealth v. Petty, 96 Ky. 452, 29 L. R. A. 786).

Illustrations of intangible or invisible rights in property are to be found in copyrights, trade-marks or names, good will, the right to the publication of news, market reports and the products of one's brain independent of copyright. [Nat. Tel. News Co. v. W. U.

Tel. Co., 119 Fed. 294, 60 L. R. A. 805; Simmons Hard-
ware Co. v. Waibel, 11 L. R. A. (S. D.) 267; DeLauder
v. Baltimore County, 94 Md. 1, 6.] These after all are
but incorporeal rights of property and could well be
classed as such. There may be and there doubtless
are others, because the ever expanding horizon of
human effort, mental and physical, is continually creat-
ing new relations out of which, from necessity, arise
new rights. Analysis will disclose that all of these
possess the essential characteristics of rights incor-
poreal in that they issue out of something corporate,
either real or personal and are inheritable, and are
not tangible or visible. [2 Black. Comm. 20; Cyclo-
pedic L. Dict.; Walker v. Daly, 80 Wis. 222, 227;
Slingerland v. Inter. Contr. Co., 43 N. Y. App. Div.
215, 230, affirmed 169 N. Y. 60.] An examination of
the alleged right to assign unearned wages, should, if
it be a property right, disclose similar essentials to
those found in the other unquestioned rights of this
character, to entitle it to a like classification. That it
is intangible and invisible will be admitted, but it
issues out of nothing corporate, it is not inheritable,
and it may be extinguished at the will of the assignor
or his employer and the creditor or assignee is without
power to prevent same and has no right of redress. To
illustrate: The right being based upon nothing but
the unsubstantial promise of the assignor, because the
wages purporting to have been assigned have not even
been conceived, much less quickened in the womb of
the future, the assignor determines, upon making the
assignment, to quit the service, or the employer termi-
nates same, and the creditor, having obtained nothing
by the assignment, loses nothing by its extinguish-
ment, except an airy possibility of the payment of his
debt from this source. From which it follows that if
this right exists, it constitutes a marked exception to
the maxim that there is no right without a remedy.
The right at best is but an expectancy, and, as we will

later show, will not, in the absence of contract, sustain an action at law even if the right to assign be conceded.

We have not been unmindful of the rulings of the courts in cases of the type of Citizens' Loan Assn. v. Boston & M. R. R. Co., 196 Mass. 528, 124 Am. St. 584, in which the implication is evident that an assignment of future earnings was held to be a property right, but in which it is expressly stated that the transaction was based upon an existing contract of service; or of Massie v. Cessna, 239 Ill. 352, 28 L. R. A. (N. S.) 1108, which held a statute in derogation of the right to assign future earnings unconstitutional, such statute being wholly unlike the one in question here, and the opinion assuming that the assignment created a property right, which we deny; or of Frorer v. People, 141 Ill. 171, 16 L. R. A. 492, which held an act unconstitutional which prohibited a certain specified class of corporations from keeping truck stores; or of Rodijkeit v. Andrews, 77 N. E. (Ohio) 747, 5 L. R. A. (N. S.) 564, which was a ruling in regard to an assignment under a contract of existing employment. These cases are not, in our opinion, sufficiently parallel in their facts or the statutes construed, to render them persuasive precedents in the case under consideration.

III. *Does assignment create a chose in action?* If it is not a property right, it has, in our opinion, no such actual or potential existence as will suffice to entitle it to be classed as a chose in action; but admitting, as is held in Close v. Gravel Co., 156 Mo. App. 1. c. 416, and cases cited, that it may be so classified, is it in the instant case, a present right or interest, or one to take effect in the future? To render it a present interest sufficient to sustain an action at law, such as is brought in the case at bar, it must, among other things, be based upon a contract of employment between the

assignor and the employer at the time of the assignment; one cannot assign wages when there is no contract of service (Bell v. Mulholland, 90 Mo. App. 612; Jones v. Richardson, 10 Met. 481; Low v. Pew, 108 Mass. 347, 11 Am. Rep. 357; Eagan v. Luby, 133 Mass. 543); no evidence of such a contract appears in the agreed statement of facts, the only reference thereto being that the assignor "was employed by defendant at the time of the assignment." A present employment will not justify the presumption that it is of any definite duration or that there is a contract in regard to same. The services, for aught disclosed in the evidence, may have been at will, from day to day or for a longer definite period, but courts cannot predicate their conclusions upon conjectures to establish agreements upon which to base rights of action. There are cases holding that no definite period of employment need be shown to sustain the validity of an assignment of future wages, but the better reasoned authorities are to the contrary.

Regardless, therefore, of whether the statute in derogation of the right to assign unearned wages is valid, an action at law is not authorized in the present case under the rule announced in some cases that an assignment creates a chose in action, for the reasons stated.

As to whether a suit in equity would lie against respondent as was held in Bell v. Mulholland, 90 Mo. App. 612; Hax v. Acme Pl. Co., 82 Mo. App. 447; and Price v. Mining Co., 83 Mo. App. 470, if the statute is invalid, is not pertinent under the facts in this case.

IV. *Constitutionality of Statute.* The part of the statute contended by the appellants to be invalid, is as follows: "All assignments of wages, salaries and earnings not earned at the time the assignment is made, shall be null and void."

The presumptions are always in favor of the constitutionality of a statute; and it will not be declared invalid unless its contravention of the Constitution is so manifest as to leave no room for reasonable doubt.

As the forms of industrial activity increase, the relations of those engaged therein towards each other undergo changes which necessitate regulatory legislation, not only for the welfare of those immediately interested, but for the general public. Such legislation is authorized under that continually expanding power recognized as an incident of sovereignty, called the police power. In the absence of this power of the State, as WOODSON, J., has aptly said in State ex rel. v. Standard Oil Co., 218 Mo. 1, 379, "the citizen would have the absolute authority to contract and the power to hold property as he might deem proper; but under that power the State may enact valid laws requiring each citizen to so conduct himself and so use his property as not to unnecessarily injure others."

The exercise of the police power as evidenced by various phases of legislation affecting individual liberty or personal rights, has met with judicial approval in many cases, the rule to be deduced therefrom being that in civilized society there is no such thing as an unrestrained power on the part of the individual to contract, this right being subject to wise and beneficial police regulations; and when an act which may prove detrimental to the public welfare is prohibited by a general statute, it will be upheld unless it is clearly in violation of some provisions of the organic law. [Grimes v. Eddy, 126 Mo. 168, 26 L. R. A. 638; State ex inf. v. Firemen's Fund Ins. Co., 152 Mo. 1, 45 L. R. A. 363; Karnes v. A. M. F. Ins. Co., 144 Mo. 413; Morrison v. Morey, 146 Mo. 543.]

And in State v. Davis, 194 Mo. l. c. 499-500, it is held that the State in the exercise of its police power "has a right to determine upon what conditions and

under what circumstances its citizens shall be entitled to pursue any vocation."

Instances of the exercise of this power held not to be in violation of the Constitution, are found in the following statutes: Requiring all corporations to pay wages of their employees semimonthly (Laws 1911, p. 150; State v. Railroad, 242 Mo. 339); abolishing the fellow-servant rule as applying to mining corporations (Secs. 5440-5444, R. S. 1909; Hawkins v. Smith, 242 Mo. 688); declaring invalid contracts made by employees with corporations limiting the liability of the latter in the event of injury to the employee (Sec. 5437, R. S. 1909; Shohoney v. Railroad, 231 Mo. 131); creating a lien in favor of subcontractors and others, notwithstanding prior payment of the full contract price by the owner of the property to the principal contractor, and further providing that such liens are not limited to the amount agreed to be paid to the owner by his contractors (Secs. 8212, 8233, R. S. 1909; Henry, etc., Co. v. Evans, 97 Mo. 47, 3 L. R. A. 332).

These statutes illustrate the extent to which the police power has been invoked here, and while we have confined our illustrations to this jurisdiction, the statutes of other States will disclose the exercise of a like, if not in some instances a greater, latitude in the enactment of laws on kindred subjects which have met with judicial approval. The statute in the instant case does not attempt to regulate labor or to interfere with contracts in regard to any present, tangible property right or interest, but does provide that those who labor shall not assign their future earnings, which are not property rights, have no potential existence and may be brought into being or the possibility of their creation prevented by the whim or caprice of the workman. The statute's denial, therefore, of the right of the workman to assign or transfer this illusory and unsubstantial nothing is the basis of the appellants' complaint that liberty and property

and the gains of industry are, by this enactment, taken without due process of law.

This contention so seriously made must, of course, be treated with that conventional gravity befitting judicial utterances. Seriously considered, therefore, resort must be had to fancy rather than fact or reason to determine in what manner individual liberty is limited or the right to contract impaired by the statute in question. We may be answered that there are precedents to sustain the contention; to which we reply that "judgment should be according to the law and not according to the precedents;" and if we may be permitted to paraphrase a couplet of the Proverbial Philosopher: "To follow precedents and wink, is easier far than 'tis to think."

We may be precluded from inquiring into the motives of the Legislature to determine the validity of the statute, but this does not deter us from discussing its purpose as disclosed by its subject and terms.

Labor and its sequence, wages, is the life of the workman, and upon the workman must that intangible thing called the State rely for its existence and perpetuity. That the providence of the workman is one of the prime factors in promoting the perpetuity of the State there can be no question. A statute, therefore, which tends to increase this providence is nothing more than one in the interest of the public welfare, and is, therefore, not an improper exercise of the police power. This is a truth so evident that it needs no precedent to prop it up. If one is required, it is to be found in the case of the International Textbook Co. v. Weissinger, 160 Ind. 349, 65 L. R. A. 599, construing a statute passed by the Legislature of Indiana much more comprehensive than the one at bar, in which it was held that a statute prohibiting the assignment of future wages by employees was not void as an unreasonable restraint upon the liberty of the

citizen or as depriving him of his property without
due process of law.  An excerpt from a portion of the
reasons adduced in support of the validity of this stat-
ute, is pertinent in this connection.  Among other
things the court said: "A large proportion of the
persons affected by these statutes of labor are de-
pendent upon their daily or weekly wages for the
maintenance of themselves and their families.  Delay
of payment or loss of wages results in deprivation of
the necessaries of life, suffering, inability to meet just
obligations to others, and, in many cases, may make
the wage-earner a charge upon the public.  The situa-
tion of these persons renders them peculiarly liable
to imposition and injustice at the hands of employers,
unscrupulous tradesmen, and others who are willing
to take advantage of their condition.  Where future
wages may be assigned, the temptation to anticipate
their payment, and to sacrifice them for an inadequate
consideration, is often very great.  Such assignments
would, in many cases, leave the laborer or wage-earner
without present or future means of support.  By re-
moving the strongest incentive to faithful service—
the expectation of pecuniary reward in the near fu-
ture—their effect would be alike injurious to the
laborer and his employer."  The International case
has been cited with approval in Chicago & E. R. R.
Co. v. Ebersole, 87 N. E. 1090.

In the discussion of the purpose and effect of a
statute to determine its constitutionality, the concrete
facts in the case at issue are immaterial.  Appellants
probably did not overreach the assignor; this is not
the question, but does the statute, without interfering
with fundamental rights, tend to prevent such an evil?
Like that of Indiana, the statute bears the stamp of
beneficence upon its face.  It restrains no right as
to anything in possession, and it impairs no contract
as to anything *in esse;* but it does protect, and that
effectually, the unfortunate and improvident from the

unscrupulous and overreaching. It is a fact too well known to render reference thereto unauthorized, that in our centers of population and trade, wage-earners, i. e., those who are paid by the day or the week or the month, constitute the only class which borrows money and pledges its future earnings in payment of same. It is equally well known that the "money shark," not too harshly named, who lets money to the hard-pressed on short time, at long interest, is the usual if not the only lender. The purpose of the statute, therefore, and it is evident from its terms, is to protect the first from the exactions of the last.

In view of these facts, even if it be conceded that an assignment of unearned wages is a property right, to our mind a palpable absurdity, or that it is a chose in action, although it has no potential existence, the validity of the statute should be upheld on the ground that its enactment is a wholesome exercise of the police power.

V. *Title.* The title of the statute is not subject to substantial objection. The principal subject of legislation is "the assignment of wages," and as a corollary thereto the regulation of same. The title is sufficiently comprehensive of the statute, and the latter is so brief, consisting of but one section, and also so definite in its terms, that no one can be misled by the title, which, conforming to a ruling of this court, is a clear and unmistakable guideboard indicating the general contents of the bill. [St. Louis v. Weitzel, 130 Mo. l. c. 616.]

From all of the foregoing we are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered. *Brown* and *Faris, JJ.,* concur; *Lamm, C. J.,* and *Graves, J.,* concur in result; *Woodson* and *Bond, JJ.,* concur in paragraph IV and the result.