H. H. WEST *et al. v.* JEFFERSON WOOLEN MILLS *et al.**

(*Knoxville.*   September Term, 1922.)

1. **ASSIGNMENTS.**   Constitutional law.   Statute invalidating assignments of unearned wages not assented to in writing by employer not retrospective.

Acts 1903, chapter 21, as amended by Acts 1903, chapter 453, carried into Shannon's Code, section 4341a1, providing that no action shall be brought to charge any employer upon any assignment by any clerk, servant, or employee of wages or salaries unearned at the time of the assignment unless the assignment is assented to in writing by the employer, is not invalid as a retrospective law within the prohibition of Constitution article 1, section 20.   (*Post, p.* 105.)

2. **CONSTITUTIONAL LAW.**   Statute invalidating assignments not assented to in writing by employer held not to impair obligation of contracts.

Acts 1903, chapter 21, as amended by Acts 1903, chapter 453, carried into Shannon's Code, section 4341a1, providing that no action shall be brought to charge any employer upon any assignment by any clerk, servant, or employee of wages or salaries unearned at the time of the assignment unless the assignment is assented to in writing by the employer, is not invalid as impairing the obligation of contracts, within the prohibition of Constitution article 1, section 20; it dealing solely with contracts to be made in the future.   (*Post, p.* 105.)

Acts cited and construed: Acts 1903, chs. 21, 453.

Case cited and distinguished: Greenfield v. Dorris, 33 Tenn., 548.

Code cited and construed: Sec. '4341a1(S.).

Constitution cited and construed: Art. 1, sec. 20.

3. **CONSTITUTIONAL LAW.**   Statute requiring assignment of unearned wages to be assented to in writing by employer held not invalid as deprivation of due process of law.

---

*On validity of an assignment of wages or salary to be earned see notes in 5 L. R. A. (N. S.), 565; 28 L. R. A. (N. S.), 1108 and 43 L. R. A. (N. S.), 746.

West v. Jefferson Woolen Mills.

Acts 1903, chapter 21, as amended by Acts 1903, chapter 453, carried into Shannon's Code, section 4341a1, providing that no action shall be brought to charge any employer upon any assignment by any clerk, servant, or employee of wages or salaries unearned at the time of the assignment unless the assignment is assented to in writing by the employer, does not violate Constitution article 1, section 8, providing for due process of law. (*Post, p. 105-114.*)

Cases cited and approved: Mutual Loan Co. v. Martell, 43 L. R. A. (N. S.), 746; Frorer v. People, 141 Ill., 171; Braceville Coal Co. v. People, 147 Ill., 66; Mallin v. Wenham, 209 Ill., 252; Ritchie v. People, 155 Ill., 98; City of Chicago v. Netcher, 183 Ill., 104; Noel v. People, 187 Ill. 587; People v. Steele, 231 Ill., 340; In re Stryker, 158 N. Y., 526; State ex rel. Hadley v. Standard Oil Co., 218 Mo., 1; Grimes v. Eddy, 126 Mo., 186; State ex rel Crow v. Firemen's Fund Ins. Co., 152 Mo., 1; Karnes v. American F. Ins. Co., 144 Mo., 413; Morrison v. Morey, 146 Mo., 543; State v. Davis, 194 Mo., 500; State v. Mo. P. R. Co., 242 Mo., 339; Hawkins v. Smith, 242 Mo. 688; Shohoney v. Quincy, O. & K. C. R. Co., 231 Mo., 131; Henry & C. Co. v. Evans, 97 Mo. 47; International Text-Book Co. v. Weissinger, 160 Ind., 349; Chicago & E. R. Co. v. Ebersole, — Ind. —.

Cases cited and distinguished: Ogilvie v. Hailey, 141 Tenn., 392; Massie v. Cessna, 28 L. R. A. (N. S.), 1108; Heller v. Lutz, 254 Mo., 704.

Constitution cited and construed: Art. 1, sec. 8.

4. **ASSIGNMENTS.** Act relating to assignment of unearned ''wages'' or ''salaries'' construed.

Acts 1903, chapter 21, as amended by Acts 1903, chapter 453, carried into Shannon's Code, section 4341a1, providing that no action shall be brought to charge any employer upon any assignment by any clerk, servant, or employee of "wages" or "salaries" unearned at the time of the assignment unless assented to in writing by the employer, was intended to protect those who worked for a fixed sum per week or per month, whether it be denominated "wages" or "salaries": such terms being interchangeable. (*Post, p. 114-117.*)

West v. Jefferson Woolen Mills.

Cases cited and approved: Harbison v. Knoxville Iron Co., 103 Tenn., 441; City of New York v. Miln, 11 Peters, 139; Passenger Cases, 7 Howard, 457; Slaughterhouse Cases, 16 Wall., 36-62; Butchers' Union Co. v. Crescent City Co., 111 U. S., 746; Bowman v. Railroad, 125 U. S., 465; Lawton v. Steele, 152 U. S., 136; Redfoot Lake Levee District v. Dawson, 97 Tenn., 172; Smith v. The State, 100 Tenn., 494; Austin v. The State, 101 Tenn., 567; Davidson v. New Orleans, 96 U. S., 97; Yick Wo v. Hopkins, 118 U. S., 356; Kidd v. Pearson, 128 U. S., 1; Lawton v. Steele, 152 U. S., 136.

FROM JEFFERSON.

Appeal from the Chancery Court of Jefferson County.— HON. M. H. GAMBLE, Chancellor.

FRANK PARK, JR., for complainants.

C. T. RANKIN and JOHN W. GREEN, for defendants.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

Roy H. Lord, while in the employ of the defendant Jefferson Woolen Mills, executed the following instrument:

"To the Jefferson Woolen Mills, Jefferson City, Tennessee:

"The undersigned hereby transfers and assigns the wages now due or to become due me from you to W. A. Edgar to the amount of $300.

"There is further transferred next to J. R. Renfro my wages now due or to become due to the amount of $200.

"There is next transferred and assigned my wages due or to become due to me to D. L. Butler to the amount of $100.

"There is next transferred and assigned to Ed Lockett my wages to become due to the amount of $400.

"There is next transferred to J. P. Nanny my wages due or to become due me to the amount of $125.

"There is next transferred and assigned my wages due or to become due me to Sterchi & Haun, of Knoxville, Tenn., to the amount of $30.

"There is next transferred and assigned my wages to become due to Minnis & Zirkle to the amount of $50.

"There is next assigned and transferred my wages due or to become due me to the sum of $150 to Jefferson City Hardware Company.

"There is next assigned and transferred to Hickle West my wages due or to become due me to the amount of $600.

"These several sums will be paid in the order named and out of my wages as earned from this date till all said sums are paid. This shall be authority to you to pay same and charge to my account with you.

"This Dec. 2, 1919.                ROYDEN H. LORD.

"Signed and acknowledged before me this December, 1919.

"C. T. RANKIN, Notary Public."

Said instrument was presented to one of the officers of the defendant, but said assignment was not assented to by him either verbally or in writing, and the defendant did not owe the assignor any sum at the time; hence the purpose of the instrument was to assign his future earnings. While the instrument recites that the assignor assigns his "wages," the proof shows that Lord was working for a salary of $200 per month, but the record does not show that he was employed for any specified time, although he continued in the employ of the defendant for many months.

The record suggests that this assignment was made by Lord in view of the fact that his wife was about to institute suit against him for alimony, although the instrument. is not attacked for fraud. In any event, it appears that he compromised with his wife by paying her $1,000, and about seventeen days after the execution of the assignment he undertook to withdraw or annul same, and the defendant continued paying his salary direct to him.

More than two years after the execution of said assignment the present bill was filed by H. H. West and J. R. Renfro to recover from defendant the sums which said instrument directed it to pay them, it being alleged that said sums were still owing and that Lord was insolvent.

The main defense interposed by the defendant is that it is not liable because it did not assent to said assignment in writing.

Chapter 21, Acts of 1903, as amended by chapter 453, Acts of 1903, and as carried into Shannon's Code at section 4341a1, reads as follows:

"No action shall be brought whereby to charge any employer upon any assignment by any clerk, servant, or employee of such employer to any person, persons, firm, or corporation of any wages or salaries unearned at the time of such assignment, unless such assignment at the time of the execution thereof shall have been assented to in writing by such employer."

To meet this defense counsel for complainants insist that the foregoing statute is unconstitutional, first, because it contravenes section 20, article 1, of the Constitution of Tennessee, which provides that "no retrospective law, or law impairing the obligations of contracts, shall be made."

Counsel does not point out the manner in which said statute contravenes the provision of the Constitution set forth above, and from a reading of the statute it is apparent to us that it is not a retrospective law, nor does it impair the obligations of contracts, as it deals solely with contracts to be made in the future.

In *Greenfield* v. *Dorris,* 1 Sneed, 548, this court said: "As to mortgages and deeds of trust made since the law was passed, they will be construed and governed by it. For there is no question as to the power of the State to declare the force and effect of future contracts made and to be executed in it."

It is next insisted that said statute violates section 8, article 1, of the State Constitution, which is as follows:

"No man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

This court, in *Ogilvie* v. *Hailey,* 141 Tenn., 392, 210 S. W., 645, said:

"The later decisions of this court and of the federal supreme court have conceded to the legislature a very wide range of discretion in the matter of classification in police statutes and revenue statutes. The idea is that, if any possible reason can be conceived to justify the classification, it will be upheld."

The great weight of authority sustains the validity of such statutes. See notes to *Massie* v. *Cessna* (Ill.), 28 L. R. A. (N. S.), 1108, and *Mutual Loan Co.* v. *Martell* (Mass.), 43 L. R. A. (N. S.), 746, also reported in 222 U. S., 225, 32 Sup. Ct., 74, 56 L. Ed., 175, Ann. Cas., 1913B, 529.

Counsel for complainants seems to concede that by the weight of authority the statute could be sustained under the police power had it been limited to "wages," but contend that "salaries" is a much broader and more comprehensive term, which cannot be upheld under the police power, and cite the case of *Massie* v. *Cessna,* supra.

In that case the first section of the statute under consideration was as follows:

"No assignment of the wages or salary of any person shall be valid, so as to vest in the assignee any beneficial interest, either at law or in equity, unless such assignment shall be in writing, signed by the assignor and acknowledged in person by the assignor before a justice of the peace in and for the township in which the assignor resides, and entered by such justice upon his docket, and unless, within three days from the date of the execution and acknowledgment of such assignment, a true and complete copy of said assignment and of the certificate of its acknowledgment shall be served upon the person, firm, or corporation from whom such wages or salary is due or is to become due, in the same manner that the summons in chancery is now required by law to be served: Provided, further, that no assignment of wages or salary by a married person shall be valid unless the same is also executed and acknowledged as above, by the assignor's wife or husband, as the case may be."

The fourth section of said statute provided that all assignments of wages to be earned in whole or in part, more than six months from and after the making of the assignment, shall be absolutely void.

The court held the act unconstitutional upon several grounds, and, in dealing with the question here involved, said:

"The appellant insists that the statute in question violates section 2 of article 2 of the Constitution of the State, which provides that 'no person shall be deprived of life, liberty, or property without due process of law.' This is the only question for consideration, as the averments of the bill with reference to transactions prior to that of February, 1907, are too indefinite to show the existence of any equity in favor of appellee.

"The right to labor for and to render services to another, and the right to dispose of the compensation to be received for so doing, are property rights within the meaning of the language just quoted from the Constitution. *Frorer* v. *People,* 141 Ill., 171, 31 N. E., 395, 16 L. R. A., 492; *Braceville Coal Co.* v. *People,* 147 Ill., 66, 35 N. E., 62, 22 L. R. A., 340, 37 Am. St. Rep., 206; *Mallin* v. *Wenham,* 209 Ill., 252, 70 N. E., 564, 65 L. R. A., 602, 101 Am. St. Rep., 233. It is at once apparent, upon an examination of this statute, that it abridges the right of the man who earns a salary and the right of the man who earns wages to contract with reference thereto. Notwithstanding this fact, appellee contends that the act in question is not prohibited by the Constitution, for the reason that it is referable to the police power of the State. The laws which the legislature may enact in the exercise of that power are laws which have a tendency to promote the public comfort, health, safety, morals, or welfare, or which have a tendency to prevent some recognized evil or wrong. *Ritchie* v. *People,* 155 Ill., 98, 40 N. E., 454, 29 L. R. A., 79, 46 Am. St. Rep., 315; *City of Chicago* v. *Netcher,* 183 Ill., 104, 55 N. E., 707, 48 L. R. A., 261, 75 Am. St. Rep., 93; *Noel* v. *People,* 187 Ill., 587, 58 N. E., 616, 52 L. R. A., 287, 79 Am. St. Rep., 238; *People* v. *Steele,* 231 Ill., 340, 83 N. E., 236, 14 L. R. A. (N. S.), 361, 121 Am. St. Rep., 321.

"It is urged: That wage-earners compose a class of inhabitants of the state who, when they desire to borrow money and secure the same by the assignment of their wages earned or to be earned, become victims of men engaged in the business of loaning money at usurious rates, who are commonly denominated 'loan sharks;' that when the wage-earner finds it necessary to borrow money upon such security, he is unable to deal with the money lender upon an even footing; that the latter is able to exact usury, and to practice various like wrongs and impositions upon him, by reason of his poverty, and sometimes by reason of his improvidence; and that this creates a condition of affairs which the legislature may remedy by the exercise of the police power. While we think this evil exists, it is yet apparent, upon a careful examination of this statute, that it is too broad in its terms to be justified as an exercise of the police power for the purpose of mitigating or remedying the wrong at which it is aimed. It applies not only to wages, but also to salaries. 'Wages,' in its ordinary acceptation, has a less extensive meaning than 'salary.' 'Wages' is usually restricted to sums paid as hire or reward to domestic or menial servants and to sums paid to artisans, mechanics, laborers, and others employed in various manual occupations, while 'salary' has reference to the compensation of clerks, bookkeepers, other employees of like class, officers of corporations, and public officers. 2 Standard Dict., p. 1573; *In re Stryker*, 158 N. Y., 526, 53 N. E., 525, 70 Am. St. Rep., 489. In this State salaries in excess of $5,000 per annum are not unusual. It cannot be said that an officer of a corporation who is in the enjoyment of a salary of $20,000 per annum is or may be the victim of the evil at which this statute is aimed, and yet his salary is plainly within the

terms of the act. Counsel for appellee intimate that a bank president or the head of a great commercial enterprise requires the same protection in this respect as a wage-earner. We have not been able to regard this suggestion as seriously made. A bank president who desires to borrow money does not need protection from a 'loan shark' unless he be mentally deficient or morally delinquent. A very limited exercise of the power of observation is sufficient to demonstrate that, as a borrower, he is not in the same class as the laborer who works for $2 per day."

The court cited no authority in support of its holding, and although numerous other acts, which have received judicial sanction, contained the word "salaries," in none of the decisions has this distinction been made.

It should be borne in mind that our act only refers to unearned wages.

A more recent case, and one more nearly in point, is that of *Heller* v. *Lutz,* 254 Mo., 704, 164 S. W., 123, L. R. A., 1915B, 191. The statute there involved is as follows:

"All assignments of wages, salaries, or earnings must be in writing, with the correct date of the asisgnment and the amount assigned and the name or names of the party or parties owing the wages, salaries, and earnings so assigned; and all assignments of wages, salaries, and earnings, not earned at the time the assignment is made, shall be null and void."

The court, in its opinion, in referring to *Massie* v. *Cessna,* supra, said that it was not unmindful of the ruling of the court in that case, "which held a statute in derogation of the right to assign future earnings unconstitutional, such statute being wholly unlike the one in question here, and the opinion assuming that the assignment created a property right, which we deny."

The court, in sustaining the constitutionality of the act involved, said:

"As the forms of industrial activity increase, the relations of those engaged therein, towards each other, undergo changes which necessitate regulatory legislation, not only for the welfare of those immediately interested, but for the general public. Such legislation is authorized under that continually expanding power recognized as an incident of sovereignty, called the police power. In the absence of this power of the state, as Woodson, J., has aptly said in *State ex rel. Hadley* v. *Standard Oil Co.*, 218 Mo., 1,379, 116 S. W., 902, 1019, a 'citizen would have the absolute authority to contract and the power to hold property as he might deem proper; but under that power the State may enact valid laws requiring each citizen to so conduct himself and so use his property as not to unnecessarily injure others.'

"The exercise of the police power, as evidenced by various phases of legislation affecting individual liberty or personal rights, has met with judicial approval in many cases; the rule to be deduced therefrom being that in civilized society there is no such thing as an unrestrained power on the part of the individual to contract; this right being subject to wise and beneficial police regulations, and, when an act which may prove detrimental to the public welfare is prohibited by a general statute, it will be upheld unless it is clearly in violation of some provisions of the organic law. *Grimes* v. *Eddy*, 126 Mo., 186, 26 L. R. A., 638, 47 Am. St. Rep., 653, 28 S. W., 756; *State ex rel. Crow* v. *Firemen's Fund Ins. Co.*, 152 Mo., 1, 45 L. R. A., 363, 52 S. W., 595; *Karnes* v. *American F. Ins. Co.*, 144 Mo., 413, 46 S. W., 166; *Morrison* v. *Morey*, 146 Mo., 543, 48 S. W., 629. And in

*State* v. *Davis*, 194 Mo., 500, 4 L. R. A. (N. S.), 1023, 92 S. W., 488, 5 Ann. Cas., 1000, it is held that 'the State,' in the exercise of its police power, 'has a right to determine upon what conditions and under what circumstances its citizens should be entitled to pursue any vocation.'

"Instances of the exercise of this power held not to be in violation of the Constitution are found in the following statutes: Requiring all corporations to pay wages of their employees semimonthly (Laws 1911, p. 150; *State v. Missouri P. R. Co.*, 242 Mo., 339, 147 S. W., 118); abolishing the fellow-servant rule as applying to mining corporations (Whittaker Rev. Stat. 1909, sections 5440-5444; *Hawkins* v. *Smith*, 242 Mo., 688, 147 S. W., 1042); declaring invalid contracts made by employees with corporations limiting the liability of the latter in the event of injury to the employee (section 5437, Rev. Stat. 1909; *Shohoney* v. *Quincy, O. & K. C. R. Co.*, 231 Mo., 131, 132 S. W., 1059, Ann Cas., 1912A, 1143); creating a lien in favor of subcontractors and others, notwithstanding prior payment of the full contract price by the owner of the property to the principal contractor, and further providing that such liens are not limited to the amount agreed to be paid to the owner by his contractors (sections 8212, 8233, Rev. Stat. 1909; *Henry & C. Co.* v. *Evans*, 97 Mo., 47, 3 L. R. A., 332, 10 S. W., 868).

"These statutes illustrate the extent to which the police power has been invoked here; and, while we have confined our illustrations to this jurisdiction, the statutes of other States will disclose the exercise of a like, if not in some instances a greater, latitude in the enactment of laws on kindred subjects which have met with judicial approval. The statute in the instant case does not attempt to regulate labor or to interfere with contracts in regard to any present,

tangible property right or interest, but does provide that those who labor shall not assign their future earnings, which are not property rights, have no potential existence, and may be brought into being, or the possibility of their creation prevented, by the whim or caprice of the workman. The statute's denial, therefore, of the right of the workman to assign or transfer this illusory and unsubstantial nothing, is the basis of the appellant's complaint that liberty and property and the gains of industry are, by this enactment, taken without due process of law.

"This contention so seriously made must, of course, be treated with that conventional gravity befitting judicial utterances. Seriously considered, therefore, resort must be had to fancy, rather than fact or reason, to determine in what manner individual liberty is limited, or the right to contract impaired, by the statute in question. We may be answered that there are precedents to sustain the contention; to which we reply that 'judgment should be according to the law, and not according to the precedents;' and if we may be permitted to paraphrase a couplet of the Proverbial Philosopher: 'To follow precedents and wink is easier far than 'tis to think.' We may be precluded from inquiring into the motives of the legislature to determine the validity of the statute but this does not deter us from discussing its purpose as disclosed by its subject and terms.

"Labor and its sequence, wages, is the life of the workman, and upon the workman must that intangible thing called the 'State' rely for its existence and perpetuity. That the providence of the workman is one of the prime factors in promoting the perpetuity of the State there can be no question. A statute, therefore, which tends to increase this providence, is nothing more than one in the

interest of the public welfare, and is therefore not an improper exercise of the police power. This is a truth so evident that it needs no precedent to prop it up. If one is required, it is to be found in the case of *International Text-Book Co.* v. *Weissinger,* 160 Ind., 349, 65 L. R. A., 599, 98 Am. St. Rep., 334, 65 N. E., 521, construing a statute passed by the legislature of Indiana much more comprehensive than the one at bar, in which it was held that a statute prohibiting the assignment of future wages by employees was not void as an unreasonable restraint upon the liberty of the citizen, or as depriving him of his property without due process of law. An excerpt from a portion of the reasons adduced in support of the validity of this statute is pertinent in this connection. Among other things, the court said: 'A large proportion of the persons affected by these statutes of labor are dependent upon their daily or weekly wages for the maintenance of themselves and their families. Delay of payment or loss of wages results in deprivation of the necessaries of life, suffering, inability to meet just obligations to others, and, in many cases, may make the wage earner a charge upon the public. The situation of these persons renders them peculiarly liable to imposition and injustice at the hands of employers, unscrupulous tradesmen, and other who are willing to take advantage of their condition. Where future wages may be assigned, the temptation to anticipate their payment, and to sacrifice them for an inadequate consideration is often very great. Such assignments would, in many cases, leave the laborer or wage-earner without present or future means of support. By removing the strongest incentive to faithful service—the expectation of pecuniary reward in the near future—their effect would be alike injurious to the laborer and his

employer.' The International Case has been cited with approval in *Chicago & E. R. Co.* v. *Ebersole,* — Ind., —, 87 N. E., 1090.

"In the discussion of the purpose and effect of a statute to determine its constitutionality, the concrete facts in the case at issue are immaterial.  Appellants probably did not overreach the assignor; this is not the question, but does the statute, without interfering with fundamental rights, tend to prevent such an evil? Like that of Indiana, the statute bears the stamp of beneficence upon its face.  It restrains no right as to anything in possession, and it impairs no contract as to anything *in esse* but it does protect, and that effectually, the unfortunate and improvident from the unscrupulous and overreaching.  It is a fact too well known to render reference thereto unauthorized that, in our centers of population and trade, wage-earners, i. e., those who are paid by the day or the week or the month, constitute the only class which borrows money and pledges its future earnings in payment of same.  It is equally well known that the 'money shark,' not too harshly named, who lets money to the hard pressed on short time, at long interest, is the usual, if not the only, lender.  The purpose of the statute therefore, and it is evident from its terms, is to protect the first from the exactions of the last.

"In view of these facts, even if it be conceded that an assignment of unearned wages is a property right, to our mind a palpable absurdity, or that it is a chose in action, although it has no potential existence, the validity of the statute should be upheld on the ground that its enactment is a wholesome exercise of the police power."

While the court in that case did not specifically discuss the distinction between "wages" and "salaries," as the

West v. Jefferson Woolen Mills.

Illinois court did, it evidently treated the words "wages," "salaries," and "earnings" as interchangeable terms, and such, we think, was the intention of our legislature in enacting the statute here involved. It was to protect those who worked for a fixed sum per week or per month, whether it be denominated "wages" or "salary," that the legislature had in contemplation.

It was stated by the Illinois court that a person earning a salary of $20,000 per year did not need such protection. While this is probably true, we think it unlikely that such a person would undertake to assign his salary. But it seems to us that a clerk, a bookkeeper, or other employee, working for a small salary, needs protection as much as an artisan or a mechanic, whose earnings, in many instances, are larger. There are thousands of employees in every city who work in department stores, offices, and cafes for small salaries and whose earnings are much less than many mechanics and artisans. Furthermore, our statute is broader than the Missouri statute, and permits such assignment where the employer assents thereto, and this he would likely do where it did not work a hardship on his employee. In the instant case the assignments amounted to nearly $2,000, which, had it been assented to, would have consumed the assignor's salary for ten months. During that time he would have had nothing with which to support himself and family, and in all probability he would have been forced to surrender his position.

This court, in *Harbison v. Knoxville Iron Co.,* 103 Tenn., 441, 53 S. W., 955, 56 L. R. A., 316, 76 Am. St. Rep., 682, had under consideration the constitutionality of an act requiring payment in money at face value, if presented on a regular pay day or not less than thirty days after issuance,

of all coupons, scrip, punchouts, store orders, or other evidence of indebtedness issued to employees for wages, although the same were payable, by their terms, in merchandise. The court said:

"Furthermore, the passage of this act was a legitimate exercise of police power, and upon that ground also the legislation is well sustained. The first right of a State, as of a man, is self-protection, and with the State that right involves the universally acknowledged power and duty to enact and enforce all such laws, not in plain conflict with some provisions of the State or federal Constitution, as may rightly be deemed necessary or expedient for the safety, health, morals, comfort, and welfare of its people. *City of N. Y.* v. *Miln,* 11 Peters, 139; *Passenger Cases,* 7 Howard, 457; *Slaughter-house Cases,* 16 Wall., 36-62; *Butchers' Union Co.* v. *Crescent City Co.,* 111 U. S., 746; *Bowman* v. *Railroad,* 125 U. S., 465; *Lawton* v. *Steele,* 152 U. S., 136; *Reelfoot Lake Levee District* v. *Dawson,* 97 Tenn., 172; *Smith* v. *The State,* 100 Tenn., 494; *Austin* v. *The State,* 101 Tenn., 567; Cooley's Const. Lim. (5th Ed.), 706; Black's Const. Law, section 154, and other authorities too numerous to mention.

"This power is an important and comprehensive one, and its application must be expected and allowed to expand and take in new subjects from time to time, as trade and business advance and new conditions arise. The scope of its exercise, within the bounds already mentioned, is limited only by the requirement that it shall not arbitrarily and unreasonably affect the citizen in his life, liberty, and property. It cannot be an excuse for oppressive legislation (*Davidson* v. *New Orleans,* 96 U. S., 97; *Yick Wo* v. *Hopkins,* 118 U. S., 356); but it covers everything relating to

West v. Jefferson Woolen Mills.

the public interests, and, in its exercise, a large discretion is necessarily vested in the legislature, which, in the first instance, is presumed to know not only what the welfare of the public requires, but also what measures are necessary for its advancement. *Kidd* v. *Pearson,* 128 U. S., 1; *Lawton* v. *Steele,* 152 U. S., 136.

"The right of contract and of property is always subject to reasonable limitation under the state's reserved police power."

Further on in the opinion this court cited, in support of its conclusions, a number of cases from other jurisdictions, in which the power had been sutained, and also referred to decisions by the Illinois court, where like statutes had been held invalid, thus indicating that, in sustaining statutes of this nature, by virtue of the police power, this court pursued a different policy from that of the supreme court of Illinois.

The chancellor held the act valid, and in this we concur. It results that the decree of the chancellor will be affirmed, with costs.